UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **WMF AIRPORT HOTEL, LTD** | § | **CASE NO.  11-34676** |
| *Debtor* | § | (CHAPTER 11) |

---

## ORIGINAL PLAN OF REORGANIZATION FILED BY WMF AIRPORT HOTEL, LTD, DEBTOR

---

In accordance with 11 U.S.C. §1121 and §1106, Debtor WMF AIRPORT HOTEL, LTD. ("WMF AIRPORT HOTEL" OR  "Debtor") files this Original Plan of Reorganization as follows:

1. **DEFINITIONS**

For purposes of this Plan of Reorganization, the following terms and definitions shall have the following meanings unless the context clearly indicates otherwise:

1.1.  **"Administrative Expenses"** shall mean those expenses described in §503 of the Bankruptcy Code.

1.2.  **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

1.3.  **"Allowed Claim" or "Allowed Interest"** means, respectively, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or Interest, proof of which was timely and properly Filed or, if no proof of claim or proof of interest was filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

1.3.1.  no objection to the allowance thereof has been interposed on or before the later of: (i) the thirtieth (30th) day after the Effective Date, or (ii) such other applicable period for objection as may be fixed or extended by the Court; or

1.3.2.  any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Court, an "Allowed Claim" shall not include any interest, fees, costs or other charges on such Claim accruing after the Petition Date.

1.4.  **"Allowed Unsecured Claim"** means an Allowed Claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

1.5.  **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, and (b) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

1.6.   **"Challenger Center Property**" shall mean that certain parcel of improved commercial real property located at 801 E NASA Road 1 in Webster, Texas 77598 and owned by WMF Challenger Plaza, LTD.

1.7.   **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.1.   **"Cash"** means cash or cash equivalents.

1.2.   "**Confirmation Date**" shall mean the date on which the Confirmation Order is entered by the Court.

1.3.   **"Confirmation Hearing"** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

1.4.   **"Confirmation Order"** means the order of the Bankruptcy Court entered following the Confirmation Hearing that confirms the Plan.

1.5.   **"Debtor in Possession"** means the Debtor between the Petition Date and the Effective Date when acting in the capacity of representative of its Estate in the Reorganization Case.

1.6.   **"Court**" shall mean the United States Bankruptcy Court for the  Southern District of Texas, Houston Division, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.7.    **"Creditors"** shall mean all creditors of the Debtor holding claims for debts, liabilities, or demands of any character whatsoever, as defined in §101(10) of  the Bankruptcy Code.

1.8.   **"Debtor**" shall mean **WMF Airport Hotel, Ltd.**

1.9.   **"Deed of Trust"** means the Deed of Trust securing the Debtor's indebtedness with the Property for the benefit of Wells Fargo Bank, N.A.

1.10.   **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.11.   **"Disallowed Interest"** means an Equity Interest or any portion thereof that has been disallowed by a Final Order or a settlement.

1.12. **"D-I-P Account"** shall mean the Debtor-in-Possession Operating bank account in this Case.

1.13. **"Disbursing Agent"** means the entity designated pursuant to this Plan to hold and distribute property under this Plan, which will be American Liberty Hospitality Inc., unless the Court, prior to the Effective Date, appoints another party hereunder to serve as the Disbursing Agent.

1.14. **"Disclosure Statement"** means the Disclosure Statement for the Debtor to accompany the Plan, as modified or amended, filed with the Bankruptcy Court.

1.15. **"Disputed Claim" and "Disputed Interest",** mean any Claim or Interest, that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a Disallowed Interest, as the case may be.

1.16. **"Effective Date"** shall mean  the date fourteen days (14) after date of Final Order. Notwithstanding any other provision of this Plan, the Effective Date shall not occur until the Confirmation Order shall have become a Final Order.

1.17. **"Equity"** means the respective legal, equitable, contractual and other rights and ownership interests of the Partners in and with respect to the Debtor.

1.18. **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

1.19. **"File" or "Filed"** means properly and timely filed with the Bankruptcy Court in the Reorganization Case, as reflected on the official docket of the Court for the Reorganization Case and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or Order of the Court.

1.20. **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; provided however that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

1.21.  **"Hotel"** shall mean the real property and all related personal property owned by the Debtor known as the Holiday Inn Hobby and located next to Hobby Airport, Southeast of downtown Houston, Texas at 8611 Airport Boulevard, Houston, Harris County, Texas.

1.22.  **"Insider"** shall have that meaning defined by 11 U.S.C.§ 101(31).

1.23.  **"Loan"** means the loan represented by the Promissory Note and the other Secured Lender Loan Documents.

1.24.  **"Partnership Agreement"** means the existing partnership agreement of the owners of the Debtor, which will continue to govern the Reorganized Debtor after the Effective Date.

1.25.  **"Order Confirming Plan"** shall mean the Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to an entry of an Order of Confirmation.

1.26.  **"Order For Relief"** shall mean the order entered in this case granting relief under Chapter 11 on June 3, 2011.

1.27.  **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

1.28.  **"Petition Date"** means June 3, 2011.

1.29.  **"Pro Rata "** shall mean the amount which is the result of multiplying the funds available to a named class of creditors by the fraction in  which the numerator is the allowed amount of a particular claim in the named class,  and the denominator is a total of the allowed amounts of all claims of the named  class, to be recalculated at the time of each  disbursement.

1.30.  **"Plan"** shall mean this Original Plan of Reorganization in its present form, or  as it may be amended or supplemented from time to time.

1.31.  **"Priority Claim"** means shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection but excluding Property Tax Claims.

1.32.  **"Promissory Note"** means the Promissory Note between the Debtor and Wells Fargo Bank, N.A.

1.33.  **"Property"** means that certain real property, together personal property and improvements thereon, owned by the Debtor, known as the Holiday Inn Houston Hobby and located at located at 8611 Airport Boulevard, Houston, Texas  77058.

1.34.  **"Property Tax Claim"** means any tax claim held by a Governmental Unit secured by a lien against the Property.

1.35.  **"Reorganization Case"** means this bankruptcy case under chapter 11 of the Bankruptcy Code.

1.36. **"Reorganized Debtor" or "Reorganized WMF AIRPORT HOTEL"**, means the Debtor or WMF AIRPORT HOTEL, Ltd, respectively, as revested with property of the Estate to the extent provided in this Plan on or after the Effective Date.

1.37. **"Retained Claims and Causes of Action"** means any and all Claims, causes of action, demands, defenses, suits, judgments, choses in action, licenses, privileges, agreements and all other rights and remedies (legal or equitable) of the Debtor and the Estate, for or on behalf of Creditors and/or the Debtor and/or the Estate, including but not limited to any and all claims and/or causes of action by the Estate and/or the Debtor, against any and all Creditors or other Persons, of every kind or nature, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity, and whether or not brought as of the Effective Date, including but not limited to those for (i) damages, (ii) the recovery of monies, (iii) lien avoidance, subordination, surcharge, recharacterization, setoff, counterclaim, contribution or recoupment, (iv) tax refunds, (v) claims and defenses such as fraud, mistake, duress and usury, (vi) claims on contracts or for breaches of duties imposed by law, (vii) injunctive, equitable or other relief, (viii) claims and causes of action that may be asserted derivatively on behalf of the Debtor, the Estate or the Reorganized Debtor, (ix) claims and causes of action pursuant to section 362 of the Bankruptcy Code and (x) all Avoidance Actions, including but not limited to those provided by §544, §545, §547, §548, §549, §550, §551, and §553 of the Bankruptcy Code.

1.38. **"Scheduled"** means set forth on the Schedules.

1.39. **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

1.40. **"Secured Claim"** means any claim that is secured by a valid, perfected and unavoidable lien on property in which the Estate has an interest as determined under section 506 of the Bankruptcy Code.

1.41. **"Secured Lender" or "Wells Fargo"** shall mean Wells Fargo Bank, N.A., and any affiliates, successors, participants, trustees or assigns thereof.

1.42. **"Secured Lender Loan"** means all claims of the Secured Lender evidenced by, arising under, or relating to the Secured Lender Loan Documents.

1.43. **"Secured Lender Loan Documents"** mean all documents evidencing the Secured Lender Loan executed by the Debtor, including but not limited to the Promissory Note and any modifications or amendments thereto, the Deed of Trust executed by the Debtor and secured by or encumbering property of the estate in favor of the Secured Lender, and any other documents executed by the Debtor relating thereto, all as may have been amended.

1.44. **"Unsecured Claim"** means any claim that is not an Administrative Claim, Priority Claim, Property Tax Claim or Secured Claim.

1.45.   **"Unsecured Creditors Fund"**  shall be that fund established under the Plan for exclusive payment of Class 3 Allowed Claims.

## 2.   GENERAL TERMS AND CONDITIONS

2.1.   The following general terms and conditions apply to this Plan:

2.1.1.   Various types of claims are defined in this Plan.  This Plan is intended to deal with all claims against the Debtor of whatever character, whether  or not contingent or liquidated, and whether or not allowed by the Court pursuant to  §502(a) of the Bankruptcy Code.  However, only those claims allowed pursuant to §502(a) of the Bankruptcy Code will receive treatment afforded by the Plan.

2.1.2.   **Rules of Interpretation**. Any term used in this Plan that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2.1.3.   **Rules Of Construction**. For purposes of this Plan:

Whenever from the context it is appropriate, each term whether stated in the singular or the plural shall include both the singular and the plural;

Any reference in the Plan to a contract, instrument, indenture, release, or other agreement or document being in a particular form or on particular terms and conditions means that such documents shall be substantially in such forms or substantially on such terms and conditions;

Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented through and including the Confirmation Date;

Unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan;

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only a particular portion of the Plan;

Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

All Exhibits to this Plan are incorporated herein, regardless of whether or when those Exhibits are Filed; and

The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

2.1.4.  **Time Periods**. In computing any time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.  **CLASSIFICATION OF CLAIMS AND INTERESTS**

The following is a designation of the classes of claims and interests under this Plan. Administrative Claims have not been classified and are excluded from the following classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in a different class to the extent that any remainder of the claim or interest qualifies within the description of such different class

3.1.  **SECURED CLAIMS**

**Class 1 – (Secured Lender Claim)** Class 1 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

**Class 2 – (Secured Property Tax Claim)** Class 2 consists of all Property Tax Claims Secured by the Hotel.

3.2.  **UNSECURED CLAIMS.**

**Class 3 – (Unsecured Convenience Claims)** consists of all Allowed Unsecured Claims of Creditors whose Claims are for an amount less than $450 and the largest ten (10) other Allowed Unsecured Claims that elect to reduce their Claims to $450.

**Class 4 – (Unsecured Claims)** Class 4 consists of all Unsecured Claims not treated elsewhere in this Plan.

**Class 5 – (Priority Wage Claims)** Class 5 consists of all Unsecured Claims for unpaid wages to the extent allowed by 11 U.S.C.§507(a)(4), with the balance of any such claim treated as a Class 4 Claim.

3.3.  **INTERESTS.**

**Class 6 – (Partner's Interest)** Class 6 consists of all Interests held by the Partners.

4.  **TREATMENT  OF  UNCLASSIFIED CLAIMS**

4.1.  **ADMINISTRATIVE CLAIMS**

4.1.1.  **Generally.** Subject to the bar date provisions herein, the Disbursing Agent shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative

Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment.

4.1.2.   **Payment of Statutory Fees.** The Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).  Any fees due as of the date of confirmation of the Plan will be paid in full on the Effective Date of the Plan.   After confirmation, the Reorganized Debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court. The Reorganized Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) the case remains open in a format prescribed by the United States Trustee.

### 4.1.3.   **Bar Date For Administrative Claims.**

4.1.3.1. **General Provisions.** Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Confirmation Date. Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to File a request for payment of such claims and that do not File such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other Person, or any of their respective property. Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

4.1.3.2. **Professionals.**   All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty days after the Effective Date; provided, however, that no later than two (2) Business Days prior to the Confirmation Hearing all professionals retained in this Reorganization Case pursuant to orders of the Bankruptcy Court shall provide the Debtor with an estimate of their accrued and unpaid fees and expenses through the Confirmation Hearing. On

the Effective Date, a reserve shall be established by the Reorganized Debtor for the estimated unpaid fees and expenses of the professionals accrued through the Effective Date, to be held by the Reorganized Debtor free and clear of all liens, claims and encumbrances until such time as any fees and expenses become Allowed Administrative Claims. All payments to professionals for actual, necessary services and costs advanced on behalf of the estate thru the entry of a Confirmation Order shall be paid pursuant to Court order and subject to the restrictions of 11 U.S.C. §330. All such fees and expenses shall be paid prior to entry of the final decree.   All services of professionals after the entry of the Confirmation Order shall be the responsibility of the Reorganized Debtor and paid in its ordinary course of business.  In the event that the holder of an Administrative Claim is not paid on the later of the Effective Date or approval by the Court of such claim, the Reorganized Debtor shall, by virtue of confirmation of this Plan, grant a security interest in its accounts, intangibles, equipment and inventory, subordinate only to all other security interest granted under this Plan and other orders of the Court, to secure payment of such Administrative Claims.  All such delayed payments shall bear interest at the rate of six (6.0%) percent per annum, beginning on the later of the Effective Date or approval by the Court of such claim.

4.1.3.3.**Ordinary Course Liabilities.** Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims. Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

| ESTIMATED ADMINISTRATIVE CLAIMS | | |
|---|---|---|
| Claimant | Amount | Comments |
| United States Trustee | $4,575.00 | Based on Full Quarter |
| Law Office of Peter Johnson | $35,000.00 | Estimate |
| TOTAL: | $39,575.00 | |

5.  **TREATMENT OF CLASSES**

5.1.  **CLASS 1  SECURED LENDER CLAIM**

    5.1.1.  **Class 1 is impaired** under the Plan.

    5.1.2.  **Class 1 Plan Note:** The Reorganized Debtor shall issue to Wells Fargo a Note dated as of the Effective Date under this Plan, in the principal amount of the Wells Fargo Claim, in renewal, modification and extension of Wells Fargo's existing note.

    5.1.3.  **Interest Rate:** Interest on the unpaid outstanding principal balance of Class 1 Plan Note shall be fixed at confirmation at the rate of five (5) year T- Bill Rate plus two and one-half percent (2.5 %) per annum. "T-Bill Rate" means the rate as published in the "Money Rates" section of the Wall Street Journal for Treasury Notes for the stated term.

    5.1.4.  **Payment Terms.** The Class 1 Plan Note shall be amortized and paid in monthly installments of principal and interest, as though said note was being amortized on a 360 month amortized basis. The Class 1 Note shall become due and payable in full five (5) years after date of issue.

    5.1.5.  **Collateral:** The Secured Lender shall retain all of its liens and security interests in the Debtor's property and assets granted to it pursuant to the Secured Lender Loan Documents, with the same validity, enforceability, attachment, perfection, priority and legal rights that existed on the Petition Date.

    5.1.6.  **Additional Collateral:** The Secured Lender shall be granted an additional lien against the Challenger Center Property, with all rights currently held by Wells Fargo in relation to the Challenger Center Property as further Collateral. Provided, Wells Fargo shall first exhaust the Debtor's property before foreclosing on the Challenger Center Property.

    5.1.7.  **Default Provisions:** Upon a default by the Reorganized Debtor in the performance of its obligations under the Class 1 Plan Note, Wells Fargo may exercise all of its rights and remedies set forth in it's Secured Lender Loan Documents, or any right or remedy available under applicable bankruptcy or non-bankruptcy law, or any right or remedy available under related security documents, including but not limited to, its rights to obtain possession and foreclose upon the Wells Fargo Collateral; provided, provided, however, before exercising any such right or remedy, (a) Wells Fargo must give written notice of non-monetary default and an opportunity to cure such default for a period of 45 days from the date of service of such written notice of a non-monetary default, and (b) Wells Fargo must give written notice of monetary default and an opportunity to cure such default for a period of 15 days from the date of service of such written notice of a monetary default. Such written notice shall be served

by certified mail, return receipt requested, or by messenger, and shall be addressed to the maker of the Class 1 Plan Note and all Guarantors of the Wells Fargo Claim.

| CLASS 1 SECURED CLAIMS | | | | | |
|---|---|---|---|---|---|
| | Claimant | Scheduled Amount | Creditors Collateral Value | Creditor Filed Proof of Claim | Debtor's Estimate of Allowance |
| 1 | Wells Fargo Bank, NA | $9,700,000.00 | $9,563,268.40 | $9,563,268.40 | $9,563,268.40 |

**5.2.    CLASS 2 - PROPERTY TAX CLAIMS**

5.2.1.  **Class 2 is impaired** under the Plan.

5.2.2.  **Generally.** The Disbursing Agent shall pay each holder of an Allowed Priority Claim for tax on the Hotel in cash including interest at the rate established by applicable non-bankruptcy law for the payment of such claims in equal monthly payments beginning the first day of the month following ten (10) days from the non-bankruptcy due date, with the last payment due twenty-four (24) months from the Order for Relief.

5.2.3.  **Collateral:** The holder of a Class 2 Claim for property tax on the Hotel shall retain all of its liens in the Debtor's Property granted by law, with the same validity, enforceability, attachment, perfection, priority and legal rights that existed on the Petition Date.

| CLASS 2 SECURED PROPERTY TAX CLAIMS | | | | | | |
|---|---|---|---|---|---|---|
| | Claimant | Scheduled | Contingent, Unliquidated, Disputed, Intent to File Objection | | Creditor Filed Proof of Claim | | Debtor's Estimate of Allowance |
| | | | C, U, D | Object | Date | Amount | |
| 1 | Harris County et al | $50,864.44 | | | 06/07/11 | $50,864.44 | $50,864.44 |

**5.3.    CLASS 3 UNSECURED CONVENIENCE CLAIMS**

5.3.1.  **Class 3**  is impaired under the Plan.

5.3.2.  **Term and Amortization:** The Allowed Class 3 Claims shall be paid the lesser of the amount of their Claim or $450 in cash and in full, thirty (30) days from the Effective Date.

| UNSECURED CONVENIENCE CLASS 2 CLAIMS | | | | | |
|---|---|---|---|---|---|
| Claimant | Scheduled | Contingent, Unliquidated, Disputed, Intent to File Objection | | Creditor Filed Proof of Claim | | Debtor's Estimate of Allowance |
| | | C, U, D | Object | Date | Amount | |
| AMERICAN HOTEL REGISTER | $238.44 | | | | | $238.44 |
| ARC TEXAS | $244.67 | | | | | $244.67 |
| CINTAS CORPORATION | $68.47 | | | | | $68.47 |
| COMMAINT COMMERCIAL MAINTENACE | $251.94 | | | | | $251.94 |
| DAVENE, INC | $253.91 | | | | | $253.91 |
| DELTA PRODUCTS | $252.09 | | | | | $252.09 |
| FEDEX | $40.47 | | | | | $40.47 |
| FORM SOURCE AND MORE | $389.96 | | | | | $389.96 |
| HOTEL INFORMATION SERVICE | $319.34 | | | | | $319.34 |
| QUANTUM PEST CONTROL | $349.65 | | | | | $349.65 |
| SCENTAIR TECHNOLOGIES | $162.38 | | | | | $162.38 |
| SUPERIOR FASHION SEAL UNIFORMS | $68.94 | | | | $68.94 | $68.94 |
| TOTAL: | | | | | | $2,640.26 |

## 5.4.    CLASS 4 GENERAL UNSECURED CLAIMS

5.4.1.  **Class 4** is impaired under the Plan.

5.4.2.  **Term and Amortization:** The Allowed Class 4 Claims shall be paid in full without interest, by a quarterly Pro-rata cash distribution of a Dividend from the balance in the Unsecured Creditors Fund, beginning thirty (30) days after the end of the first calendar quarter after confirmation until all Allowed Class 4 Claims are paid in full.

| UNSECURED CLASS 4 CLAIMS | | | | | |
|---|---|---|---|---|---|
| Claimant | Scheduled | Contingent, Unliquidated, Disputed, Intent to File Objection | | Creditor Filed Proof of Claim | | Debtor's Estimate of Allowance |
| | | C, U, D | Object | Date | Amount | |
| AUTOCHLOR | $2,967.83 | | | | $3,771.62 | $3,771.62 |
| DISCOUNT COMMERCIAL | $1,666.17 | | | | | $1,666.17 |

| | | | | | |
|---|---|---|---|---|---|
| OFFICE | | | | | |
| EASTEX LASER | $497.88 | | | | $497.88 |
| GUES SUPPLY | $1,899.87 | | | | $1,899.87 |
| HD SUPPLY FACILITIES | $3,887.06 | | | | $3,887.06 |
| HOBART SERVICE | $651.40 | | | | $651.40 |
| IPANEMA SOLUTIONS LLC | $1,175.70 | | | $1,175.70 | $1,175.70 |
| JC DEAUX AIRPORT, INC | $1,380.69 | | | | $1,380.69 |
| KONE INC | $571.41 | | | $4,945.11 | $4,945.11 |
| ROYAL CUP DINE-MOR, INC | $704.16 | | | | $704.16 |
| SOUTHERN DISCOUNT | $675.00 | | | | $675.00 |
| SPRINT | $644.07 | | | | $644.07 |
| SUNCOAST PLUMBING | $4,520.92 | | | | $4,520.92 |
| SYSCO FOOD SERVICE | $9,947.13 | | | | $9,947.13 |
| WELLS FARGO FINANCIAL | $13,306.10 | | | | $13,306.10 |
| FRANCHISING INC | | | | $48,507.93 | $48,507.93 |
| CORTE INC | $646.18 | | | | $646.18 |
| SEYED SALEHI | $21,608.20 | | | | $21,608.20 |
| | **TOTAL:** | | | | **$120,435.19** |

## 5.5.    CLASS 5 UNSECURED WAGE CLAIMS

5.5.1.  **Class 5**  is impaired under the Plan.

5.5.2.  **Term and Amortization:** The Allowed Class 4 Claims shall be paid in twelve (12) equal monthly payments beginning the first day of the month following ten (10) days from the Effective date.

| UNSECURED PRIORITY WAGE CLAIMS | | | | | |
|---|---|---|---|---|---|
| Claimant | Scheduled | Contingent, Unliquidated, Disputed, Intent to File Objection | | Creditor Filed Proof of Claim | | Debtor's Estimate of Allowance |
| | | C, U, D | Object | Date | Amount | |
| SEYED SALEHI | $33,333.20 | | | | | $11,725.00 |

## 5.6.    CLASS 6 – EQUITY

5.6.1.  **Class 6 is not impaired** under the Plan.

5.6.2.  **Class 6   Interests** are unimpaired under the Plan. Partners' rights and duties under the Partnership Agreement will not be affected under the Plan and the General Partner shall assume all of its obligations, duties and rights and retain all of its interests as set forth under the Partnership Agreement.        Provided, Partner William M. Friederichs, Jr. shall

contribute additional collateral consisting of the Challenger Center to facilitate treatment of Class 1.

## 6.    MEANS OF PLAN EXECUTION

6.1.    **Vesting of Property of the Estate in Reorganized Debtor.** As of the Effective Date, all property of the Estate (including debtor in possession bank accounts, Cash held by any receiver, custodian or similar person or entity, insurance polices, including title insurance, and all rights of the Debtor thereunder, and the Retained Claims and Causes of Action) shall revest in the Reorganized Debtor free and clear of all claims, liens, encumbrances and other interests except as otherwise provided herein. From and after the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. On the Effective Date, pursuant to the Plan and the Confirmation Order, any receiver, custodian or similar person or entity appointed prior to the Effective Date for the Debtor or any of its property shall be terminated and discharged from its responsibilities and duties and all property, including Cash of the Debtor held by such receiver, custodian or similar person or entity shall be immediately turned over to the Reorganized Debtor without setoff or offset.

6.2.    **Change in Bylaws.**   The Reorganized Debtor shall make such changes as are needed in its bylaws to provide that no dividends, distributions or loans to any interest holder, until payments required under Class 2 have been paid in full.

6.3.    **Unsecured Creditors Fund.** The Reorganized Debtor shall pay $2,000 per month, beginning sixty (60) days from the Effective Date, into a separate bank account established for payment of Class 4 Claims.  Payments shall be disbursed Pro-Rata until all Class 4 Unsecured Claims are paid in full, without interest.

6.4.    **Funding of the Plan.** The Cash required to be distributed under the Plan to the holders of Allowed Administrative Claims and Allowed Claims on the Effective Date (or on such later date when such Claims become Allowed Claims) shall be provided first by available income of the Reorganized Debtor, and then if necessary, by capital investments from the Partners.

6.5.    **Disbursing Agent.** Subject to the approval of the Bankruptcy Court, the Managing Member of the Reorganized Debtor, or such other entity as the Reorganized Debtor may employ, shall act as Disbursing Agent under the Plan and make all distributions required under the Plan. Unless otherwise required, the Disbursing Agent shall serve without bond.

## 7.    EXECUTORY CONTRACTS AND LEASES

7.1.    **Executory Contracts to be Assumed.**  All contracts with the Debtor for ongoing work in the ordinary course of business shall continue, and to the extent required

are expressly assumed by confirmation of the Plan, including, but not limited to the following:

    7.1.1.   *American Liberty Hospitality, Inc.* – Hotel Management Agreement.

    7.1.2.   *Intercontinental Hotel Group* – Holiday Inn Franchise Agreement.

    7.1.3.   *Wells Fargo Financial Leasing* – Equipment lease.

7.2.    **Leases to be Rejected.**  All other leases and executory contracts not expressly assumed by the Debtor prior to Confirmation of the Plan shall be deemed rejected. Any lease rejection Claimant shall be required to file a claim for rejection damages on or before thirty (30) days from the Effective Date or such claims shall be disallowed.


## 8.    PROCEDURES FOR RESOLVING AND TREATING DISPUTED AND CONTINGENT CLAIMS

8.1.    **Objection Deadline.**  As soon as practicable, but in no event later than thirty (30) days after the Effective Date, objections to claims shall be filed with the Bankruptcy Court and served upon the holders of each of the claims to which objections are made.

8.2.    **Responsibility for Objecting to Claims.**  Pursuant to 11 U.S.C. §502(a) of the Bankruptcy Code, any party-in-interest may object to a claim.   The Reorganized Debtor may join in an objection filed by another party-in-interest.

8.3.    **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to any portion of a claim that is a disputed claim unless and until all objections to such disputed claims have been determined by final order.

8.4.    **Allocated Distributions.**  The Reorganized Debtor shall withhold from the property (inclusive of cash, or other property) to be distributed under the Plan, and shall place in the disputed claim reserve together with interest, the proportion of such property as sufficient to permit distributions to be made to holders of disputed claims if such claim become allowed claim after the Effective Date.  As to any disputed claim, upon  request for an estimate under Bankruptcy Code §502(c), the Bankruptcy Court shall estimate the disputed claim for the purpose of allowing the Reorganized Debtor to fix the maximum distribution to which such disputed claim will ever be entitled.   As soon as practicable after the Effective Date, the Reorganized Debtor shall object pursuant to §502(a) of the Bankruptcy Code, or otherwise seek to fix the amount of any unliquidated claim.  If parties elect not to request an estimate from the Bankruptcy Court with respect to any disputed claim, The Reorganized Debtor shall compute the proportion of property to be placed in the disputed claims reserve based on the amount set forth on the proof of claim filed by the holders of such claim.

8.5.     **Distribution After Allowance.**  Payment and distributions from the disputed claims reserve to each holder of a disputed claim, to the extent it ultimately becomes an allowed claim, shall be made in accordance with the provision of the Plan governing the class of claims to which the disputed claim belongs.  As soon as practicable after the date of the order or judgment of the Bankruptcy Court allowing such claim becomes a final order, any property in the disputed claim reserve that would have been distributed to the holder of an allowed claim prior to the date on which the disputed claim became an allowed claim shall be distributed, together with all interest or other earnings actually earned thereon to the date such distributions are made.

8.6.     **Distributions After Disallowance.**  Any property placed in the disputed claim reserve in respect to a disputed claim that is disallowed shall be distributed in accordance with the provisions of the Plan governing the class of claims to which the disputed claim belongs, among the holders of allowed claims in such class, Pro Rata, to accelerate repayment in the amounts provided by the Plan as soon as practicable after the date the order or judgment of the Bankruptcy Court disallowing such claim becomes a final order.  Provided, however, if there are no further claims in such class such funds will retained by the Reorganized Debtor.

8.7.     **Treatment of Contingent Claims.**  Until a contingent claim becomes  fixed, absolute, and allowed, such claims shall be treated as a disputed claim for the purposes of estimates, allocations, and distributions under the  Plan.

## 9.     ACCEPTANCE OR REJECTION OF PLAN

9.1.     **All Classes to Vote.**  Each class of claims shall vote separately to accept or reject the Plan.

9.2.     **Acceptance By Class of Creditors.**  An impaired class of claims shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the allowed claims of such class that are voted.  For purposes of this Section, a vote shall not be counted if under the Bankruptcy Court rules it should not be counted pursuant to §1126(e), Bankruptcy Rules of Procedure, or other applicable law.

9.3.     **Confirmation Pursuant to §1129(b) of the Bankruptcy Code.**  If any impaired class of claims fails to accept the Plan in accordance with §1126 of the Bankruptcy Code, WMF AIRPORT HOTEL will request the Bankruptcy Court to confirm the Plan in accordance with §1129(b) of the Bankruptcy Code and hereby so moves the Court for confirmation in accordance therewith and specifically pleads that the Plan is fair and equitable to such rejecting class.

## 10.     MAINTENANCE OF CAUSES OF ACTION

10.1.     **General Preservation of Claims by the Debtor.**  Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Reorganization Case: (i) any and all Retained Claims and

Causes of Action accruing to the Debtor or the Estate shall remain assets of and vest in the Reorganized Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Retained Claims and Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and (ii) neither the Debtor, the Estate, nor the Reorganized Debtor waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Retained Claims and Causes of Action that constitute property of the Debtor or the Estate: (a) whether or not such Retained Claims and Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not any such Retained Claim and Cause of Action is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to any such Retained Claim and Cause of Action Filed a proof of claim or interest in the Reorganization Case, Filed a notice of appearance or any other pleading or notice in the Reorganization Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Retained Claims and Causes of Action, or potential Retained Claims and Causes of Action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's or the Reorganized Debtor's right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Retained Claims and Causes of Action that the Debtor or its Estate have or may have as of the Effective Date. The Debtor expressly reserves all Retained Claims and Causes of Action for later adjudication by the Reorganized Debtor, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Retained Claims and Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt Retained Claims and Causes of Action that are alleged in any lawsuits in which the Debtor is a defendant or an interested party, against any Person, including the plaintiffs or codefendants in such lawsuits.

10.2.   **Post-Confirmation Challenge to Claims.**  Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtor, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer or transaction may be reviewed by the Debtor or the Reorganized Debtor subsequent to the Effective Date and maybe the subject of an action after the Effective Date, whether or not: (a) such Person

has Filed a proof of Claim or Interest against the Debtor in the Reorganization Case; (b) such Person's proof of Claim or Interest has been objected to by the Debtor; (c) such Person's Claim or Interest was included in the Debtor's Schedules; or (d) such Person's scheduled Claim or Interest has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated or disputed.

10.3.   **No Waiver of Claims.** Neither the failure to list a Claim or Interest in the Schedules filed by the Debtor, the failure of the Debtor or any other Person to object to any Claim or Interest for purposes of voting, the failure of the Debtor or any other Person to object to a Claim, Interest or Administrative Claim before Confirmation or the Effective Date, the failure of any Person to assert a claim or cause of action before Confirmation or the Effective Date, the absence of a proof of Claim or Interest having been filed with respect to a Claim or Interest, nor any action or inaction of the Debtor or any other Person with respect to a Claim, Interest, or Administrative Claim, other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Debtor or the Reorganized Debtor before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, Interest or Administrative Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any claim or cause of action against the holder of any such Claim or Interest.

10.4.   **Avoidance and Recovery Actions.**   After the Effective Date, the Debtor, to the extent allowed by law, may litigate any avoidance or recovery actions under §544, §545, §547, §548, §549, §550, §551, and §553 of the Bankruptcy Code. Specifically, and not as a limitation, the Debtor hereby preserves under the Plan, any cause of action it may have under the aforesaid provisions.

10.5.   **Other Maintained Causes of Action**   After the Effective Date, the Debtor, to the extent allowed by law, further retains rights to enforce warranty claims against creditors who have provided service and equipment to the Debtor prior to confirmation of the Plan and to enforce contract rights owned by the Reorganized Debtor against account Debtors.

10.6.   **Voting and Failure to Object Shall not be Bar to Action.**   Delivery of a ballot to accept the Plan or election by a party-in-interest not to challenge the confirmation of the Plan shall not constitute res judicata regarding subsequent objections to claims or actions for recovery pursuant to the foregoing provisions.

## 11.   DISCHARGE

11.1.   **Discharge.**   On the Confirmation Date the Debtor shall be discharged from any debt that arose prior to such date to the extent provided by 11 U.S.C. §1141 as a non-liquidating entity.

## 12.     RETENTION OF JURISDICTION

12.1.   From and after the Confirmation Date  the Court shall retain jurisdiction for the following purposes:

(a) to hear and determine any and all objections to the allowance of claims or actions to equitably subordinate claims or any controversy as to the classification of claims;

(b) to hear and determine any and all adversary proceedings, applications, and litigation matters pending on the effective date or brought after the effective date in respect to WMF AIRPORT HOTEL causes of action arising before the Effective Date;

(c) to hear and determine claims arising from the rejection of executory contracts or leases;

(d) to enable the Reorganized Debtor to commence and prosecute any and all proceedings which may be brought after the Effective Date relating to claims or causes of action which arose prior to the Effective Date or to recover any transfers, assets, properties, or damages to which the Reorganized Debtor may be entitled under the applicable provisions of the Bankruptcy Code and the Plan;

(e)  to enter and implement such orders as may be appropriate if confirmation is for any reason stayed, reversed, revoked, modified or vacated;

(f)  to modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the confirmation order as may be necessary to carry out the purposes and intent of the Plan; and

(g) to enter such order which may be necessary or appropriate in the furtherance of confirmation and implementation of the  Plan.

## 13.     CREDITOR ENFORCEMENT ON DEFAULT

13.1.   Substantial consummation of the Plan shall occur prior to entry of Final Decree and any defaults under the confirmed Plan occurring after entry of a Final Decree shall be a liability of the newly Reorganized Debtor.

13.2.   In addition to any rights specifically provided to a Claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment to a creditor pursuant to the terms of this Plan shall be an event of default to that creditor under the Plan.  If the Reorganized Debtor fails to cure an event of default as to such payments within thirty (30) days after receipt of a written notice of default from such creditor, then such creditor may exercise any and all rights and remedies under applicable non-bankruptcy law to collect such claim or seek such relief as may be appropriate in the United States Bankruptcy Court.

13.3.   Notwithstanding provisions of this Plan, default rights recited in the Secured Lender Documents shall prevail to the extent that they relate to the Property of the Debtor.

## 14.   MISCELLANEOUS PROVISIONS

14.1.   **Execution of documents in furtherance of the Plan.**  Upon reasonable notice after Effective Date, WMF AIRPORT HOTEL will cooperate with each class of claimant treated under the Plan by executing documents necessary to acknowledge or memorialize the terms of this Plan as approved by the final order including but not limited to notes, financing statements, and loan agreements. Provided however, such agreements shall be in substantial compliance with the terms of the Plan and any expense for preparation of same shall be borne by the party requesting compliance with this Section and to the extent provided by the Plan, each claimant shall provide written evidence of release of its Claim when reasonably requested by the Reorganized Debtor.

14.2.   **Headings** are utilized in the Plan for convenience of reference only, and shall not constitute a part of the Plan for any other purpose.

14.3.   **Defects, omissions, and amendments not material and adverse.**   WMF AIRPORT HOTEL may with the approval of the Bankruptcy Court and without notice to all holders of claims or interest, insofar as such changes do not materially and adversely effect holders of claims and interests, correct any defect, omission, or inconsistency in the  Plan in such manner as to such extent as may be necessary or desirable.

14.4.   **Amendments, Material and Adverse.**  Material or adverse amendments may be made to the Plan before or after confirmation in compliance with the Bankruptcy Code.

14.5.   **Governing Law.**  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by and construed an enforced in accordance with the laws of the State of Texas.

14.6.   **Guarantors**.  Nothing herein shall be deemed to release the liability of any non-debtor guarantor to a Creditor; provided, however, that so long as the Debtor is current with respect to all of its obligations under this Plan and the Confirmation Order, Creditors may not pursue collection of their Claims from any guarantor.  If the Debtor commits an uncured default in its obligations hereunder, then and only then may Creditors seek relief against guarantors.

14.7.   **Notices.**  All notices, request or demands for payments provided for in the Plan shall be in writing and shall be deemed to be given when personally delivered by hand, or deposited in any general or branch post office of the United States Postal Service, or received by telex or telecopier.  Notices, request, and demands for payment shall be addressed and sent postage prepaid or delivered, in the case of notices, request, or demands for payments, to: WMF AIRPORT HOTEL, LTD REORGANIZATION PLAN, 16865 Diana Lane, Suite 200, Texas 77058, with a

copy to PETER JOHNSON, ATTORNEY FOR WMF AIRPORT HOTEL, LTD, 11 Greenway Plaza, Suite 2820, Houston, Texas 77046.  Unless advised in writing,  all distributions made by the Debtor will be made to the address of the claimant listed in the Debtor's schedules on file with the Bankruptcy Court unless a proof of claim has been filed with a different address.  Any notice of change of address shall be effective only upon receipt by the Reorganized Debtor.

14.8.   **Severability.**   Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

14.9.   **Substantial Consummation**. The Plan shall be deemed substantially consummated thirty (30) days from Confirmation.   Upon substantial consummation, the Debtor may move for a final decree closing the case and requesting such other orders as may be just.

14.10.   **Third Party Payment Credit.**  To the extent that any claim provided for by this Plan receives any credits or payments from third parties during the term of the Plan, such credits or payments shall reduce amount of payments required under the Plan to a Claimant receiving such third party credit or payment.  In the event that such a Claimant is entitled to payment under the Plan in more than one classification, such credit or payment shall be first applied to Priority Claim payments, next to Secured Claim payments and the balance, if any, to Unsecured Claim payments due from the Reorganized Debtor.

14.11.   **Income Tax Reporting and Withholding.**  In connection with the Plan, WMF AIRPORT HOTEL shall comply with all reporting requirements imposed by federal, tax, local and foreign taxing authorities, and all distributions hereunder shall be subject to any withholding and reporting requirements.  Creditors may be required to provide certain tax reporting information as a condition to receipt of distributions pursuant to the Plan.

DATED: October 21, 2011

Respectfully submitted,

*/s/ William M Friedrichs, Jr*

_____
William M Friedrichs, Jr. , President
WMF Development, Inc., GP
WMF AIRPORT HOTEL, LTD

**LAW OFFICES OF PETER JOHNSON**

*/s/Peter Johnson*

By:_____
PETER JOHNSON
SBT #10778400 FB#2475
Eleven Greenway Plaza, Suite 2820
Houston, Texas 77046
Telephone (713) 961-1200
Telefax (713) 552-1433
pjohnson@pjlaw.com
Attorney for
WMF AIRPORT HOTEL, LTD

10/20/2011 11:46 AM: Peter Johnson plan1-wmf.docx

---