UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **WMF AIRPORT HOTEL, LTD** | § | CASE NO. **11-34676** |
| **Debtor** | § | **(CHAPTER 11)** |

## ORIGINAL DISCLOSURE STATEMENT FILED
## BY DEBTOR  WMF AIRPORT HOTEL, LTD.

THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT, WHICH RELATES TO THE DEBTOR'S ORIGINAL PLAN OF REORGANIZATION.  A COPY OF THE PLAN IS INCLUDED HEREWITH AND DESCRIBED IN THIS DISCLOSURE STATEMENT.

**THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THIS PLAN.**

LAW OFFICE OF PETER JOHNSON

*/s/Peter Johnson*

_____
PETER JOHNSON, FB NO. 2475
TBA 10778400
Attorney in Charge for Debtor
Eleven Greenway Plaza, Suite 2820
Houston, Texas  77046
(713) 961-1200
(713) 961-0961 facsimile

**PLEASE TAKE NOTICE THAT APPROVAL OF THIS DISCLOSURE STATEMENT BY THE COURT IS NOT A FINDING BY THE COURT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE OR THAT THE COURT ENDORSES THE ENCLOSED PLAN. RATHER THE COURT HAS APPROVED THE DISCLOSURE STATEMENT AS COMPLYING WITH 11 U.S.C.§1125 AS CONTAINING ADEQUATE INFORMATION AS REQUIRED BY SUCH PROVISION OF LAW.**

**TABLE OF CONTENTS**

1.  INTRODUCTION ............................................................................................. 1
    1.1.   Purpose of Chapter 11 .......................................................................... 2
    1.2.   Source of Information in Disclosure Statement ..................................... 3

2.  BACKGROUND OF THE DEBTOR ............................................................ 3
    2.1.   The Formation of the Debtor and Operational History ......................... 3
    2.2.   Partners of WMF Airport Hotel, Ltd ................................................... 4
    2.3.   Management of Hotel ............................................................................ 4
        2.3.1.   Physical Assets ............................................................................ 4
        2.3.2.   Appraisals of the Hotel ................................................................ 5
        2.3.3.   Accounts Receivables .................................................................. 5
    2.4.   Business of WMF Airport Hotel ........................................................... 5
    2.5.   Employees. ............................................................................................ 6

3.  SIGNIFICANT EVENTS DURING BANKRUPTCY ................................. 6
    3.1.   Voluntary Petition filing ....................................................................... 6
    3.2.   Activity Since filing ............................................................................. 6
    3.3.   Bar Date ................................................................................................ 8
    3.4.   Appointment of Creditors Committee ................................................... 8
    3.5.   Financial Condition Since the Petition Date ......................................... 8

4.  ANTICIPATED FUTURE OF WMF AIRPORT HOTEL .......................... 9
    4.1.   Effect of Reorganization ....................................................................... 9

5.  OVERVIEW OF THE PLAN ........................................................................ 9
    5.1.   Effect of the Plan on the Debtor ........................................................... 9
    5.2.   Claims to be Served by Plan ................................................................. 9
    5.3.   Summary of Classification and Treatment of Claims and Interests ...... 9
        5.3.1.   Administrative Claims .................................................................. 9
        5.3.2.   Priority Claims ........................................................................... 10
        5.3.3.   Claims Of Creditors That Hold Collateral To Secure Repayment Of Their Claims ..... 10
        5.3.4.   Unsecured Claim Treatment-Full Payment ............................... 12
        5.3.5.   The Partners of WMF Airport Hotel .......................................... 12
    5.4.   Modification or Revocation of the Plan ............................................... 12

6.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... 12

7.  APPOINTMENT OF PROFESSIONALS AND COMPENSATION .............. 13
    7.1.   Attorneys ............................................................................................. 13

8.  ACCEPTANCE AND CONFIRMATION OF THE PLAN ........................... 13
    8.1.   Acceptance of the Plan ........................................................................ 13
    8.2.   Impairment of Claims .......................................................................... 14
    8.3.   Best Interest of Creditors .................................................................... 15
    8.4.   Voting Procedures ............................................................................... 15
    8.5.   Chapter 7 Liquidation Analysis .......................................................... 16
    8.6.   Feasibility of the Plan ......................................................................... 17
    8.7.   Alternatives to the Plan ....................................................................... 17
    8.8.   Risk to Creditors if Plan is Approved ................................................. 18

9.    LITIGATION .................................................................................18

10.   GOVERNMENTAL REGULATION ............................................................18

11.   SELECTED FINANCIAL DATA ..............................................................18
      11.1.   Method of Accounting Used by Debtor ................................................18
      11.2.   Financial Reports .........................................................................18

12.   PREFERENCES AND RECOVERABLE TRANSFERS............................18

13.   AFFILIATES OF THE DEBTOR .............................................................19
      13.1.   Management of Hotel ....................................................................19

14.   MANAGEMENT OF THE REORGANIZED DEBTOR .............................19
      14.1.   American Liberty Management .........................................................19

15.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES...........................19
      15.1.   Tax Generally .............................................................................19
      15.2.   Federal Income Tax Consequences to the Debtor ..................................20
      15.3.   Federal Income Tax Consequences to Claimholders ...............................20
      15.4.   Information Reporting and Backup Withholding .....................................21

## APPENDIX OF EXHIBITS TO DISCLOSURE STATEMENT

Plan of Reorganization ...................................................... Appendix "1"
Current Financial [Sept 2011 MOR]....................................... Appendix "2"
Financial Projection  ........................................................ Appendix "3"
Year to Date Income Statement ............................................ Appendix "4"

## 1.      INTRODUCTION

Debtor WMF AIRPORT HOTEL, LTD. ("WMF Airport Hotel" or "Debtor") submits this Disclosure Statement Under 11 U.S.C. § 1125 in Support of Debtor's Original Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement") in connection with its solicitation of acceptances of the Plan under Chapter 11 of the United States Bankruptcy Code filed jointly by the Debtor (the "Plan").  A copy of the Plan is enclosed herewith for your review.

This Disclosure Statement is being provided in order to disclose important and necessary information to allow a reasonably informed decision by creditors receiving distribution under the Plan to exercise its rights to vote on the Plan.  The purpose of this summary is to answer questions, which are most often asked by a party receiving a Disclosure Statement. Unless otherwise stated, the information contained herein is current as of September 30,2011 which is at the end of the Debtor's most recently reported accounting period. Also, the forecast provided with the Disclosure Statement are figured around that date as well. A term used in this Disclosure Statement and not defined herein has the meaning assigned to that term in either the Plan or the Bankruptcy Code.

In addition to reviewing this Disclosure Statement, all persons receiving the Disclosure Statement are urged to review fully the provisions of the Plan and all attachments to the Disclosure Statement.

This Disclosure Statement is not intended to replace careful review and analysis of the Plan.  Rather, it is submitted as an aid and supplement in your review of the Plan and in an effort to explain the terms and implications of the Plan on file with the Bankruptcy Court.  Every effort has been made to explain fully the various aspects of the Plan as it may affect all creditors and holders of interest.  If you have any questions, the Debtor urges you to contact Debtor's legal counsel and every effort will be made to assist you.

The Bankruptcy Court entered an order approving the Disclosure Statement and finding that it contains information of a kind and in sufficient detail, adequate to enable creditors whose votes on the Plan are being solicited, to make an informed judgment whether to accept or reject the Plan.

Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes on the Plan may be made, except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code.  No other party has been authorized to utilize any information concerning the Debtor or its affairs, other than the information contained in this Disclosure Statement, to solicit votes on the Plan.  Creditors and holders of equity interest should not rely on any information relating to the Debtor, other than that contained in this Disclosure Statement and the exhibits attached hereto.

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE APPENDIX,  NO REPRESENTATIONS CONCERNING THE DEBTOR, THE ASSETS, THE PAST OPERATIONS OF THE DEBTOR, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

**EXCEPT AS SPECIFICALLY NOTED, THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS**

DISCLOSURE STATEMENT.  THE DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.  THE FACTUAL INFORMATION REGARDING THE DEBTOR, INCLUDING THE ASSETS AND LIABILITIES OF THE DEBTOR, HAS BEEN DERIVED FROM NUMEROUS SOURCES, INCLUDING, BUT NOT LIMITED TO, DEBTOR'S BOOKS AND RECORDS, SCHEDULES AND DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.

THE DEBTOR ALSO COMPILED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT FROM RECORDS AVAILABLE TO THEM, INCLUDING, BUT NOT LIMITED TO, PLEADINGS AND REPORTS ON FILE WITH THE BANKRUPTCY COURT, LOAN AGREEMENTS AND BUSINESS RECORDS.

THE APPROVAL BY THE BANKRUPTCY COURT OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTY OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NEITHER THE DEBTOR NOR COUNSEL FOR THE DEBTOR CAN WARRANT NOR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACIES.  NEITHER THE DEBTOR NOR THEIR COUNSEL HAS VERIFIED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, ALTHOUGH THEY DO NOT HAVE ACTUAL KNOWLEDGE OF ANY INACCURACIES.

IF THE REQUISITE VOTE IS ACHIEVED FOR EACH CLASS OF IMPAIRED CLAIMS, THE PLAN IS SUBSEQUENTLY CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN), WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

### 1.1.    Purpose of Chapter 11

Chapter 11 is the principal reorganization Chapter of the Bankruptcy Code.  Under Chapter 11, a debtor in possession attempts to reorganize its affairs.  The formulation of a plan of reorganization or a plan of liquidation is the principal purpose of a Chapter 11 case.  This Plan sets forth the means for satisfying the holders of claims against the Debtor through reorganizing the affairs of the Debtor.

Confirmation of a plan is necessary for a Debtor in Chapter 11 to provide the court-approved treatment to its creditors under its plan. Unless the plan is confirmed, the Debtor is legally prohibited from providing you what it has proposed in its plan.  In the event of a conflict or difference between the definitions used, and provisions contained in the Disclosure Statement and the Plan, the definitions in the Plan shall control.

### 1.2. Source of Information in Disclosure Statement

The information contained in this disclosure statement was collected from the records of WMF Airport Hotel, provided by the members of the management of WMF Airport Hotel and has not been the subject of an external audit.

## 2. BACKGROUND OF THE DEBTOR

### 2.1. The Formation of the Debtor and Operational History

WMF Airport Hotel is a Texas Limited Partnership formed in 2005 to purchase and rehabilitate the real property presently owned by the Debtor into a performing hotel on real property located next to Hobby Airport, Southeast of downtown Houston, Texas at 8611 Airport Boulevard, Houston, Harris County, Texas ("Hotel").   The Hotel and its related furnishings constitute the property owned by the Debtor.

 The Hotel was originally constructed in 1985 and was initially operated under the Holiday Inn flag.  The previous owner of the Hotel lacked the capital to maintain the first tier Holiday Inn flag and in 2004 was forced to close the Hotel.  The Debtor acquired the Hotel, invested significant capital to rehab, refurnish and reopen the Hotel.  The rehabilitation included not only the physical structure, but complete new soft goods and furniture package for all guest rooms.  The initial reopening in 2005 was under the Ramada Plaza flag, a significantly lower tier flag than the predecessor.  In the Fall of 2006, after engagement of American Liberty Hospitality, Inc. ("ALHI"), the Hotel again acquired the Holiday Inn flag.  The change added substantial occupancy, primarily from the superior reservation system utilized by Holiday Inn.

Hurricane Ike, which occurred in September 2008, required the Hotel to evacuate on September 12 and due to damages from high winds was unable to reopen until October 1 of the same year. Following immediate clean up during the twenty days that the property was closed, a number of rooms remained out of order for replacement of all of the damaged soft goods. Rooms remained out of order on a rotating basis for a period of approximately four additional months. Approximately $1,143,500 in repairs and renovations where completed following the hurricane, although repairs were complicated by the refusal of the Debtor's prime lender to release insurance funds recovered for such repairs.  There is currently no residual damage from the hurricane.

 To maintain the first tier flag with Holiday Inn, the Debtor has successfully completed renovations related to the Holiday Inn Re-launch Program between January of 2008 and July 31, 2010. The Holiday Inn brand relaunch is the largest in the history of the hospitality industry, with more than 3,300 hotels around the world being updated -improving quality and driving consistency at Holiday Inn and Holiday Inn Express hotels around the world. Globally more than 2,500 hotels have already been relaunched. The relaunch focused on the following items, among others, which have been completed by the Debtor:

> ➢ Upgraded and decluttered lobby areas

> ➢ A Holiday Inn signature scent and sound

> ➢ New exterior lighting and landscaping

➢ New signage with the redesigned logo

➢ All Holiday Inn employees also go through an extensive "Stay Real" training program to ensure guests receive the level of service they expect.

### 2.2.    Partners of WMF Airport Hotel, Ltd

Under Texas law, the Debtor's limited partnership is owned by the following Partners:

| | | |
|---|---|---|
| WMF Development, Inc. | 1% | Sole General Partner |
| William M Friedrichs, Jr. | 49% | Limited Partner |
| ALH Properties No. 1, Inc.[1] | 30% | Limited Partner |
| ALH Properties No. 11, Inc. | 20% | Limited Partner |

### 2.3.    Management of Hotel

American Liberty Hospitality, Inc. ("American Liberty") has managed the day to day operations of the Hotel for over four (4) years and American Liberty is currently the management company engaged by the Debtor with the permission of the Court as well as permission of its lenders prior to the filing of the case.    American Liberty was instrumental in acquiring the Holiday Inn flag for the Hotel and is compensated at the rate of 3% of gross revenues.    American Liberty manages several hotel properties in the Houston, Harris County area and will continue to provide management subsequent to confirmation of the Plan.    American Liberty is owned by Nick Massad, one of the owners of the ALH Properties No. 1, Inc. and ALH Properties No. 11, Inc., holders of 50% of the partnership in the Debtor.

#### 2.3.1.   Physical Assets

WMF Airport Hotel maintains 194 guestrooms, public areas and attendant furniture, fixtures hotel equipment and miscellaneous mechanical systems.

WMF Airport Hotel has relied on management's knowledge in estimating the fair market value of its assets.    Specifically, WMF Airport Hotel scheduled the following assets on the date of filing of the case.

| ASSET | FMV |
|---|---|
| Real Property and Related Personal Property Hotel | $9,723,220.00 |
| Cash | $89,338.34 |
| Accounts | $124,371.15 |
| Inventory | $18,475.18 |

---

[1]   The ALH entities are owned by Nick Massad and family.

| | | |
|---|---|---|
| **Total:** | **$9,955,404.67** | |

### 2.3.2. Appraisals of the Hotel

In its business operations and financial capitalization, WMF Airport Hotel, primarily through Lenders, has commissioned periodic appraisals by independent appraisers to establish value for the Hotel.  The following are the results of such appraisals:

| DATE | AS-IS VALUE | STABILIZED VALUE DATE | FMV | FF&E CONTR | APPRAISER |
|---|---|---|---|---|---|
| July    2009 | $11,400,000 | July 2011 | $12,400,000 | $1,400,000 | US Realty Consultants, Inc. |
| August   2010 | $9,700,000 | August 2014 | $11,500,000 | $1,500,000 | US Realty Consultants, Inc. |
| March 2011 | $8,600,000 | March 2014 | $10,300,000 | $1,500,000 | US Realty Consultants, Inc. |
| July  2011 | $8,000,000 | July 2014 | $9,600,000 | $1,500,000 | US Realty Consultants, Inc. |

The Debtor disputes the appraisal reduction trend disclosed by the appraisals commissioned by Wells Fargo, the Primary Lender on the Hotel and believes that the Hotel has a value that equals or exceeds the claim filed by Wells Fargo in the case, as reflected in the earlier appraisals.  Unlike other properties, the Hotel has had no significant changes since the July 2009 (post-hurricane Ike period), but only improvement and the Holiday Inn Re-launch Program, which was completed in 2010 has significantly improved the appearance and service.  Contrary to the most current appraisal commissioned by Wells Fargo reducing the value by 17% in 2011, the Harris County Tax Appraisal District has increased the assessed value of the Hotel by ten (10%) percent over that same period.  Apparently, Wells Fargo seeks to block the proposed restructure by the radical reduction in value of the Hotel presented by its appraisers.[2]

### 2.3.3. Accounts Receivables

The Debtor has an interest in accounts generated by Hotel rentals, although most are paid current with the service.  A listing was provided in the official schedules filed in the bankruptcy case and has remained consistent since the filing of the Case.

The accounts owned by WMF Airport Hotel are routinely all collected.

### 2.4. Business of WMF Airport Hotel

The basic business operated by WMF Airport Hotel is the operation and renting of rooms in a Holiday Inn Hotel.

---

[2]  On September 15, 2011, Wells Fargo filed a Motion for Relief from the Bankruptcy Stay to all foreclosure and stated that *"…Given the substantial size of Wells Fargo's likely deficiency claim, Wells Fargo will hold a blocking position in any plan…"*

Historically, WMF Airport Hotel has produced significant revenues and its reported gross receipts for the four (4) years prior to bankruptcy as well as the 2011[3] revenues are as follows:



### 2.5. Employees.

WMF Airport Hotel has no employees, but is managed by American Liberty under a management and agreement.   American Liberty contracts for employees.

## 3.   SIGNIFICANT EVENTS DURING BANKRUPTCY

### 3.1. Voluntary Petition filing

On June 3, 2011 WMF Airport Hotel filed a voluntary chapter 11 case in the Bankruptcy Court for the Southern District of Texas.

### 3.2. Activity Since filing

Immediately after the filing of the case, WMF Airport Hotel sought use of the rent revenues to operate the Hotel. After initially authorizing use on an expedited basis, the Court approved an agreement between the Debtor and Wells Fargo authorizing the budgeted use of cash collateral collected from Debtor's operations, pending the presentation of a plan of reorganization.

The Debtor currently has 194 rooms available for rent and has maintained occupancy for 2011 as follows:

---

[3]  Includes actual through August 2011 and projection for remaining months of 2011.



The Hotel is located near Hobby Airport and because it serves primarily business travelers, revenues and occupancy tend to be low in the Summer season and rise in the Fall and Winter, with May being the most active.

The following represents the Debtor's business activity in 2011 and a projection of activity for the remainder of the year:



*decline is due to normal cyclical seasonality



*decline is due to normal cyclical seasonality

### 3.3.   Bar Date

The Bankruptcy Court established September 26, 2011 as the last date to file proofs of claim (the "Bar Date") in the WMF Airport Hotel case.  The same order provides that claims filed after the Bar Date would be forever barred from sharing in any distributions from the Debtor's estate.

Pursuant to the provisions of Bankruptcy Rule of Procedure 3003, it is not necessary for any claimant to file a proof of claim unless their claim is scheduled by WMF Airport Hotel as disputed, contingent or unliquidated.  Additionally, in the event that the amount scheduled by the Debtor differs from the amount allegedly owed on the debt, a claim must be timely filed.

### 3.4.   Appointment of Creditors Committee

Under the rules of bankruptcy, the office of the United States Trustee in its capacity of oversight in Chapter 11 proceedings is authorized to designate and appoint an official committee of creditors.  In the WMF Airport Hotel case, the United States Trustee was unable to form a committee.

### 3.5.   Financial Condition Since the Petition Date

WMF Airport Hotel has operated its business affairs as Debtor-in-Possession since the entry of an order for relief under Chapter 11 to the extent required to maintain the business, but has not made any extraordinary disposition or acquisition of assets since that date. Attached hereto is a copy of the most recent unaudited balance sheet and income statement in the form of the Debtor's Monthly Operating Report filed with the United States Bankruptcy Court for the period ending September 30, 2011.

4.      **ANTICIPATED FUTURE OF WMF AIRPORT HOTEL**

4.1.    **Effect of Reorganization**

The Debtor expects to implement its Plan and continue on its business restructure that should provide full compliance with the Plan.  Attached hereto is a financial projection prepared by management that projects income, expense and provisions for payment of creditor claims under the Plan.

All of the foregoing together with the restructure under Chapter 11 should enable the Debtor to return to its prior occupancy with revenue sufficient to service all debt provided under the Plan.

5.      **OVERVIEW OF THE PLAN**

5.1.    **Effect of the Plan on the Debtor**

The Plan will have the effect of paying the Secured Creditor Claims of Wells Fargo and the Taxing Authorities in full, while maintaining existing lien rights.  The Plan provides for the 100%  payment of allowed unsecured creditor claims, the majority from a quarterly disbursing account over a period of five (5) years.  A copy of the proposed Plan is enclosed with this Disclosure Statement. The provisions of that Plan will control over and conflict with the following summary.

5.2.    **Claims to be Served by Plan**

WMF Airport Hotel  believes that the following are claims that are to be served by the Plan:

| CLASS | CREDITORS | AMOUNT |
|:---:|:---:|---:|
| 1 | SECURED LENDER CLAIMS | $9,563,258 |
| 2 | SECURED TAX CLAIMS | $50,864 |
| 3 | UNSECURED CONVIENCE CLAIMS | $2,640 |
| 4 | GENERAL UNSECURED CLAIMS | $120,435 |
| 5 | PRIORITY WAGE CLAIMS | $11,725 |
| 6 | EQUITY OWNED BY THE PARTNERS | |
| | **TOTAL CLAIMS** | $9,748,922.00 |

5.3.    **Summary of Classification and Treatment of Claims and Interests**

5.3.1.  **Administrative Claims**

Obligations incurred by WMF Airport Hotel during its reorganization process and prior to the confirmation of the Plan will be paid in full and in cash on or before the effective date of the Plan or if required, when approved by the Court.  These types of claims are not classified for reorganization for the reason that WMF Airport Hotel is bound by rules of bankruptcy operation to pay such claims as they come due, unless they are of the specific type that require prior court approval such as professional fees of attorneys.  The funds for any such payment will come from the business operations of the Debtor.  The Debtor may not have

sufficient liquidity on the Effective Date to pay all such Administrative Claims, in which case it will obtain agreements to pay such claims over negotiated terms that will not interfere with other performance under the Plan.  In the event that the holder of an Administrative Claim is not paid on the later of the Effective Date or approval by the Court of such claim, the Reorganized Debtor shall, by virtue of confirmation of this Plan, grant a security interest in its accounts, intangibles, equipment and inventory, subordinate only to all other security interest granted under this Plan and other orders of the Court, to secure payment of such Administrative Claims.  All such delayed payments shall bear interest at the rate of four (4.0%) percent per annum, beginning on the later of the Effective Date or approval by the Court of such claim.

The Plan provides that professional fees and expenses incurred after the confirmation of the Plan will be the responsibility of the Reorganized entity.  It is anticipated that professional fees for consummation of the Plan will be approximately $5,000.  Additionally, WMF Airport Hotel shall be required to continue to pay quarterly administrative fees to the office of the United States Trustee until a final decree is entered in the case.  These fees do not require court approval, but are required to be paid by applicable law, which sets the rate.

### 5.3.2.   Priority Claims

On the date of the entry of an order for relief in the case under Chapter 11, taxes were due to the various state and local taxing authorities that are granted priority under the provisions of 11 U.S.C. §507 of the bankruptcy code, but in this case these tax claims are also secured by the Hotel.   All property taxes due to be paid prior to the filing of the case, were timely paid.  However, the 2011 property tax became due pre-petition and will be paid pursuant to Class 2 of the Plan.  The total amount of the Claim is $50,684.44.  An additional priority is provided for wages owed prior to filing.  Seyed Salehi, the on-site manager agreed to the postponement of wages prior to filing in the amount of $33,333.20.  However, only $11,725.00 is allowed as a Priority Claim and the balance shall be treated as a general unsecured claim in the case.  The Priority Claim of Seyed Salehi shall be paid under Class 5 of the Plan.

### 5.3.3.   Claims Of Creditors That Hold Collateral To Secure Repayment Of Their Claims

A separate category has been created in the Plan for treatment of Wells Fargo Bank, NA ("Wells Fargo"), the lender holding the first mortgage on the Hotel. The Debtor believes that the Claim of Wells Fargo is fully Secured by the Value of its Collateral on the date of the Bankruptcy case filing in the amount of the filed Claim of $9,563,268.40 or in such amount greater to the extent the Court determines that the Collateral has a higher value, and will be paid in full in the following manner:

**Class 1 Plan Note:** The Reorganized Debtor shall issue to Wells Fargo a Note dated as of the Effective Date under this Plan, in the principal amount of the Wells Fargo claim, in renewal, modification and extension of Wells Fargo's existing note.

**Interest Rate:** Interest on the unpaid outstanding principal balance of Class 1 Plan Note shall be fixed at confirmation at the rate of five (5) year T- Bill Rate plus two and one-half percent (2.5 %) per annum. "T-Bill Rate" means the rate as published in the "Money Rates" section of the Wall Street Journal for Treasury Notes for the stated term.

**Payment Terms.** The Wells Fargo Plan Note shall be amortized and paid in monthly installments of principal and interest, as though said note was being amortized on a 360 month amortized basis. The Wells Fargo Note shall become due and payable in full five (5) years after date of issue.

**Collateral:** Wells Fargo shall retain all of its liens and security interests in the Debtor's property and assets granted to it pursuant to the Secured Lender Loan Documents, with the same validity, enforceability, attachment, perfection, priority and legal rights that existed on the Petition Date.

**Additional Collateral:** Wells Fargo shall be granted an additional lien against a parcel of improved real property known as the Challenger Center Property *(parcel of improved commercial real property located at 801 E NASA Road 1 in Webster, Texas 77598 and owned by WMF Challenger Plaza, LTD[4],)* with all rights currently held by Wells Fargo in relation to the Challenger Center Property as further Collateral. In any foreclosure, Wells Fargo shall first exhaust the Debtor's property before foreclosing on the Challenger Center Property. The Challenger Center Property is currently secured by a first lien note in favor of Wells Fargo in the original amount of $7,500,000 with a current balance of approximately $5.9 million. The Challenger Center has an appraised value of more than $9.6 Million[5].

**Default Provisions:** Upon a default by the Reorganized Debtor in the performance of its obligations under the Class 1 Plan Note, Wells Fargo may exercise all of its rights and remedies set forth in it's pre-bankruptcy lender documents, or any right or remedy available under applicable bankruptcy or non-bankruptcy law, or any right or remedy available under related security documents, including but not limited to, its rights to obtain possession and foreclose upon the Wells Fargo Collateral; provided, provided, however, before exercising any such right or remedy, (a) Wells Fargo must give written notice of non-monetary default and an opportunity to cure such default for a period of 45 days from the date of service of such written notice of a non-monetary default, and (b) Wells Fargo must give written notice of monetary default and an opportunity to cure such default for a period of 15 days from the date of service of such written notice of a monetary default. Such written notice shall be served by certified mail, return receipt requested, or by messenger, and shall be addressed to the maker of the Class 1 Plan Note and all Guarantors of the Wells Fargo Claim.

An additional separate class has been created for the payment of the Debtor's secured property taxes and will be paid in cash payments, including interest at the rate established by applicable non-bankruptcy law for the payment of such claims in equal monthly payments beginning the first day of the month following ten (10) days from the non-bankruptcy due date, with the last payment due twenty-four (24) months from the Order for Relief. Likewise, the tax claimants shall retain all of their liens in the Debtor's Property granted by law, with the same validity, enforceability, attachment, perfection, priority and legal rights that existed on or after the Petition Date.

---

[4] This entity is owned by William M. Friedrichs, Jr., one of the Debtor's Limited Partners.

[5] Appraised in August 2009.

### 5.3.4.  Unsecured Claim Treatment-Full Payment

The unsecured claims will be paid their claims in full, without interest, in three separate classes.  **First, (i)** for the sake of convenience all claims less than $450.00 will be paid within thirty (30) days from the Effective Date of the Plan.  **Second, (ii)** the priority wage claims will be paid in twelve (12) equal monthly payments beginning the first day of the month following ten (10) days from the Effective date; and, **Third (iii)** all remaining unsecured claims shall be paid in full without interest, by a quarterly Pro-rata cash distribution of a Dividend from the balance in the Unsecured Creditors Fund, beginning thirty (30) days after the end of the first calendar quarter after confirmation until paid in full.  The Unsecured Creditors Fund shall be populated by monthly deposits of $2,000 per month.

### 5.3.5.  The Partners of WMF Airport Hotel

Under the Plan, the Equity holders will retain their interest.  However, the Reorganized WMF Airport Hotel will be prohibited from advancing funds, making loans, granting raises or distributing bonuses to any equity holder until all the payments required by the Plan have been made and for the further contribution of additional collateral provided to Wells Fargo.  To the extent the Partners or others have guaranteed obligations of the Debtor, nothing in the Plan shall be deemed to release the liability of any non-debtor guarantor to a Creditor; provided, however, that so long as the Debtor is current with respect to all of its obligations under the Plan and the Confirmation Order, Creditors will not be allowed to pursue collection of their Claims from any guarantor.  If the Debtors commit an uncured default in their obligations under the Plan, then and only then may Creditors seek relief against such guarantors.

### 5.4.  Modification or Revocation of the Plan

The Debtor may, with the consent of the Court and in accordance with the Bankruptcy Code, amend or modify the Plan prior to the date on which the Bankruptcy Court enters the order confirming the Plan (the "Confirmation Date").  The Debtor may seek to amend or modify the Plan as a result of substantive or technical objections to the Plan filed by holders of claims, as a result of any other matter that may affect the Debtor's  ability to obtain confirmation of the Plan, or if for any other reason, such amendment or modification is determined by the Debtor to be in its best interest.

The potential impact of any such amendment or modification on the holders of claims cannot currently be foreseen, but may include a change in the economic impact of the Plan on some or all of the Classes or a change in the relative rights of such Classes.

If such amendments or modifications are adverse, the Plan, as amended, may be resubmitted and any Class of claims that is adversely affected thereby may be given the opportunity to withdraw any votes for the Plan prior to such modification or amendment.  After the Confirmation Date, inconsistencies in the Plan or in the order of the Bankruptcy Court may be necessary to carry out the purposes and intent of the Plan, so long as the holders of claims are not adversely affected and the Bankruptcy Court approves such correction or reconciliation.

## 6.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The bankruptcy law allows the Debtor to assume or reject any pending lease agreements or executory contracts that exist on the date of the order for relief.  WMF Airport Hotel scheduled executory contracts or leases and all contracts with the Debtor for ongoing work in the

ordinary course of business shall continue, and to the extent required are expressly assumed by confirmation of the Plan, including, but not limited to the following:

> American Liberty Hospitality, Inc. – Hotel Management Agreement.
> Intercontinental Hotel Group – Holiday Inn Franchise Agreement.
> Wells Fargo Financial Leasing – Equipment lease.

## 7.    Appointment of Professionals and Compensation

During the bankruptcy process, the employment of professionals by a Debtor-in-Possession is restricted by the provisions of 11 U.S.C. §327 and requires Court authority to employ and compensate such professionals.  In this proceeding it has been necessary for the Debtor to employ professionals to assist with its legal matters.  In this bankruptcy case, WMF Airport Hotel engaged the following professional:

### 7.1.    Attorneys

**Law Offices of Peter Johnson.**  Prior to the entry of the Order for Relief in this case, WMF Airport Hotel engaged Peter Johnson, Esquire ("Johnson") to provide legal services to the Chapter 11 entity as its general bankruptcy counsel.  The Debtor paid a retainer fee amount of $25,000.00 to Johnson for legal costs and professional services to be provided to the Debtor in this proceeding and on the date of filing. Prior to the filing, costs in the amount of $1,039.00 and pre-filing professional fees in the amount of $11,552.00 were paid from such retainer.  The balance in the amount of $12,904.00 has been applied to post-petition costs and fees.  The Debtor estimates that additional fees for representation by the Law Offices of Peter Johnson will not exceed $35,000.  Other than the fees due to the United States Trustee, there are no other known administrative expenses to be paid.

## 8.    ACCEPTANCE AND CONFIRMATION OF THE PLAN

### 8.1.    Acceptance of the Plan

Confirmation of a Plan under Chapter 11 requires, among other things, that at least one class of creditors or claimants who are not insiders, vote in favor of the Plan.   This vote is calculated by  counting only those creditors who actually send in a ballot on time.  If two thirds in total dollar amount and a majority in number of claims actually voting in a class approve the Plan, that class of creditors is considered an accepting class.  Under the Plan proposed by WMF Airport Hotel, one Class  must vote in favor of the Plan for it to be confirmed by the Court.  The Debtor believes that claimants will support the Plan when they consider the fact that the assets available to pay their claims consist of operating revenues that will likely be entirely lost in the event the reorganization is unsuccessful.   In the event that no class votes to accept the plan, an alternative plan may be proposed by the Debtor.  However, the failure of confirmation could result in the loss of the Hotel to the benefit of the Secured Lender without payment of any dividend to remaining creditors or equity.

The proponent of a Plan also must meet all other applicable requirements of Section 1129(a) of the Bankruptcy code (except Section 1129(a)(8), if the proponent proposes to seek confirmation of a Plan under Section 1129(b) of the Bankruptcy Code).   These other requirements include, among other things, that the Plan comply with the applicable provisions of

Title 11 and other applicable law, that the Plan be proposed in good faith, and that at least one impaired class of creditors vote to accept the Plan. WMF Airport Hotel believes that the Plan satisfies all other applicable requirements of Section 1129(a) of the Bankruptcy Code. Provided, in the event that a class votes to reject the Plan under 1129(a)(8), the Debtor believes that the Plan is fair and equitable to all classes and will seek confirmation by cram down.

### 8.2.  Impairment of Claims

A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interest of that class are modified under a plan. Modification for purposes of determining impairment however, does not include curing defaults and reinstating maturity or cash payment in full. Classes of claims or interests that are not "impaired" under a plan are conclusively presumed to have accepted the plan and are thus not entitled to vote. Classes of claims or interests receiving no distribution under a plan are conclusively presumed to have rejected the plan and thus are not entitled to vote. Acceptances of the Plan are being solicited only from those persons who hold claims in an impaired class entitled to receive a distribution under the Plan.

Under Section 1124 of the Bankruptcy Code, a class of claims or interests is impaired under a plan, **unless**, with respect to each claim or interest of such class, the plan:

1.  Leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

2.  Notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of its claim or interest after the occurrence of a default:

    (a)  Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankrupt Code;

    (b)  Reinstates the maturity of such claim or interest as it existed before the default;

    (c)  Compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

    (d)  Does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or interest; or

3.  Provides that, on the Effective Date the holder of such claim or interest receives, on account of such claim or interest, cash, equal to:

    (a)  With respect to a claim, the allowed amount of such claim; or

    (b)  With respect to an interest, if applicable, the greater of:

        (1)  Any applicable fixed liquidation preference; or

        (2)  Any fixed preference at which the Debtor, under the terms of the security, may redeem the security.

In Section 5 of the Plan, the Debtor has identified the impaired classes of creditors under the Plan. In the event there are questions regarding whether a person is in an impaired class, the person should assume that his or her claim is impaired and vote. If the claim is determined to be impaired, the vote will be considered by the Bankruptcy Court.

**IMPAIRED CREDITORS ANTICIPATED TO RECEIVE A DISTRIBUTION UNDER THE PLAN ARE BEING SOLICITED TO VOTE.  IF YOU HOLD AN ADMINISTRATIVE CLAIM or UNIMPAIRED CLAIM, THE DEBTOR IS NOT SEEKING YOUR VOTE.**

### 8.3.    Best Interest of Creditors

Even if all classes of claims accept the Plan, the Bankruptcy Court may, nonetheless, still find the Plan unconfirmable.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" test and be feasible.  The "best interests" test generally requires the value of the consideration to be distributed to the holders of claims or interests under the Plan to not be less than those parties would receive if the Debtor were liquidated in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code.  Under the "feasibility" requirement, the Bankruptcy Court must find there is a reasonable probability that the Debtor will be able to meet the obligations created under the Plan, without the need for further financial reorganization.

**THE DEBTOR BELIEVES THAT THE "BEST INTERESTS" TEST AND THE FEASIBILITY REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE CAN BE SATISFIED AT THE CONFIRMATION HEARING.**

### 8.4.    Voting Procedures

Any creditor of the Debtor whose claim is **IMPAIRED** under the Plan is entitled to vote, if either (1) the claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings, *provided, however*, any claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon motion by such claimant.  Any such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.  In addition, a creditor's vote may be disregarded if the Bankruptcy Court determines that the creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Holders of impaired claims who are entitled to vote and fail to do so will not be counted as either accepting or rejecting the Plan.  Nevertheless, if the requisite vote is achieved for your class of impaired claims, you will be bound by the terms of the Plan.

A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement and mailed to creditors entitled to vote.  A creditor must (1) carefully review the ballot and the instructions thereon, (2) execute the ballot, and (3) return it to the address indicated thereon by the deadline to enable the ballot to be considered for voting proposes.

**THE DEADLINE FOR RETURNING YOUR BALLOT IS  STATED ON THE ENCLOSED BALLOT (THE "VOTING DEADLINE")**

After completion of the ballot, creditors should return the executed ballot in the self-addressed envelope to:

**WMF AIRPORT HOTEL PLAN**
**C/O PETER JOHNSON, ESQUIRE**
**P.O.  BOX 980877**
**HOUSTON, TX  77098-0877**

**VOTING INFORMATION AND INSTRUCTION FOR COMPLETING THE BALLOT:**

1. **FOR YOUR VOTE TO BE COUNTED YOU MUST COMPLETE THE BALLOT, INDICATE ACCEPTANCE OR REJECTION OF THE PLAN IN THE BOXES INDICATED ON THE BALLOT AND SIGN AND RETURN THE BALLOT TO THE ADDRESS SET FORTH ON THE PRE-ADDRESSED ENVELOPE.  IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.**

2. If you hold claims in more than one class under the Plan, you may receive more than one ballot.  Each ballot you receive votes only your claims for that class.  Please complete and return each ballot you receive.  You must vote all of your claims within a singe class under the Plan to either accept or reject the Plan.  Accordingly, a ballot (or multiple ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan will not be counted.

3. The ballot is for voting purposes only and does not constitute and shall not be deemed a proof of claim or interest or an assertion of a claim.

**8.5.    Chapter 7 Liquidation Analysis**

WMF Airport Hotel intends to use the Plan as a vehicle to pay creditors a meaningful dividend and therefore prevent the race by individual creditors to dismantle the assets and provide an unfair advantage to some creditors. The property owned by WMF Airport Hotel is primarily the Hotel and liquidation would almost dictate that unsecured creditors would not be paid any meaningful amount and they are better served by the proposed Plan.  The secured creditors claims approximate $9.5 million and are secured by virtually all assets of WMF Airport Hotel.  As a result of the foregoing, if WMF Airport Hotel liquidated its assets in Chapter 7, it is unlikely that unsecured creditors would be paid anything.   WMF Airport Hotel believes the following is an estimation of liquidation value of the Debtor's assets:

### *Chapter 11 Plan Estimated Liquidation Value of Assets*

| Assets | FMV | DISCOUNT | LIQUIDATION |
|---|---|---|---|
| Real Property and Related Personal Property Hotel | $9,563,268 | 15% | $8,128,778 |
| Cash | $74,843 | 0% | $74,843 |
| Accounts | $12,851 | 0% | $12,851 |

| | | | |
|---|---|---|---|
| Inventory | $30,022 | 0% | $30,022 |
| | | | |
| | | | |
| | | | |
| **Total Assets at Liquidation Value:** | **$9,680,985** | | **$8,246,495** |
| **LESS:** | | | |
| Secured creditors' recoveries | | | $8,128,778 |
| Chapter 7 trustee fees and expenses | | | $82,465 |
| Chapter 11 administrative expenses | | | $25,000 |
| Priority claims, excluding administrative expense claims | | | $62,409 |
| **Total Deductions in Chapter 7:** | | | 8,298,652 |
| **(1) Balance for unsecured claims** | | | -$52,158 |
| **(2) Total dollar amount of unsecured claims** | | | $123,075 |
| | | | |
| **Percentage of Claims Unsecured Creditors in a Chapter 7 Liquidation:** | | | **0%** |
| | | | |
| **Percentage of Claims Unsecured Creditors under the Plan:** | | | **100%** |

### 8.6.  Feasibility of the Plan

The Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, the Bankruptcy Court must determine that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.  WMF Airport Hotel believes that it will be able to fulfill its obligations under the Plan. Attached hereto is the Debtor's projection demonstrating the feasibility of the Plan.  This appendix was prepared by WMF Airport Hotel from historical data and a projection model that incorporates both current sales data as well as projected increases.  The projections contained in the appendix assume that revenue will be produced as projected by use of the current activity. The Debtor believes that the projections are sufficient to support the operations that WMF Airport Hotel believes will continue to increase its revenues as it moves back to toward the 60% occupancy it previously experienced.

### 8.7.  Alternatives to the Plan

Alternatives to confirmation of the Plan include the submission of an alternative plan of reorganization by any party in interest.  No party in interest has expressed to WMF Airport Hotel an intention to file an alternative plan of reorganization.  The liquidation of the Debtor under Chapter 7 of the Bankruptcy Code, as described above (See Chapter 7 Liquidation Analysis), would also be an alternative to the Plan.  In that event, it is unlikely that a dividend would be available to unsecured creditors.

### 8.8.  Risk to Creditors if Plan is Approved

It is probable that the unsecured creditors would not receive a dividend under Chapter 7. Even if this case were dismissed, the Secured Lender will likely foreclose on the Project and any unsecured creditors would be relegated to the race to judgment.  However, under the Plan, the business operation developed by WMF Airport Hotel during its history will continue and WMF Airport Hotel believes that it will succeed in the implementation of its restructure that will provide full payment of  claims within the budget that will allow fair and equal treatment to all creditors.  There is always the risk that WMF Airport Hotel might be unable to pay any dividend if the market changes or some other unknown contingency occurs that impairs the ability of WMF Airport Hotel to produce the revenues needed.  However, the unsecured claims under the Plan are much better off than if the estates were liquidated.

### 9.  LITIGATION

At the time of the filing of the case, WMF Airport Hotel was not involved in any litigation.

### 10.  GOVERNMENTAL REGULATION

There are no extraordinary government regulations that control the operation of WMF Airport Hotel, other than the industry specific regulations.  WMF Airport Hotel is in compliance with such regulations and will continue to meet the required standards.

### 11.  SELECTED FINANCIAL DATA

### 11.1.  Method of Accounting Used by Debtor

The Debtor has utilized the accrual method of accounting in the preparation of its financial reports and accounting since its inception.

### 11.2.  Financial Reports

The Debtor has attached hereto a copy of the most recent statement of operations filed with the Court in this case, has further disclosed details of its assets and liabilities throughout this Disclosure Statement.     This appendix contains both a current balance sheet and a statement of operations.

### 12.  PREFERENCES AND RECOVERABLE TRANSFERS

The provisions of §§544, 545, 546, 547 & 548 of the Bankruptcy Code provide for the recovery of property that was transferred to both existing creditors and other parties during the time period prior to bankruptcy filing ("Transfers").  The purpose of these provisions are to assure each creditor that they will be treated fairly and equal to creditors that have similar claims. For example, it would be unfair to allow a creditor to be paid on an overdue debt just prior to filing of the case when other creditors do not get paid.  The law presumes that a transfer is recoverable if it was made within 90 days prior to bankruptcy filing and the transfer was for the payment of an antecedent or stale debt.  There exist several defenses to the recovery of such transfers, such as debts paid in an amount less than $5000, which may in some cases defeat an action to recovery of such transfers.

After an examination of the records by the Debtor, there do not appear to be any pre-petition transfer actions the will provide a benefit to the creditors when compared to the costs of recovery.

## 13. AFFILIATES OF THE DEBTOR

The bankruptcy law defines an affiliate of a Debtor to be (1) a party that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the Debtor or (2) a corporation, 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the Debtor, or by a party that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the Debtor.   The following may be affiliates:

| WMF Development, Inc. | 1% | Sole General Partner |
|---|---|---|
| William M Friedrichs, Jr. | 49% | Limited Partner |
| ALH Properties No. 1, Inc.[6] | 30% | Limited Partner |
| ALH Properties No. 11, Inc. | 20% | Limited Partner |

### 13.1. Management of Hotel

American Liberty Hospitality, Inc. ("American Liberty") has managed the day to day operations of the Hotel for over four (4) years and American Liberty is currently the management company engaged by the Debtor with the permission of the Court as well as permission of its lenders prior to the filing.

## 14. MANAGEMENT OF THE REORGANIZED DEBTOR

### 14.1. American Liberty Management

The Plan provides for American Liberty Hospitality, Inc. to continue to manage the day to day operations of the Hotel.   However, the overall management of the business partnership that owns the Hotel will be by the partners identified above in accordance with the Limited Partnership Agreement between such partners.

## 15. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

### 15.1. Tax Generally

The tax consequence to any particular creditor may vary depending on their own circumstances and they should consult with their own tax professional for advice regarding the impact on them of their acceptance or rejection of the Plan.   The following discussion summarizes certain United States federal income tax consequences of the implementation of the Plan to the Debtor and Claim holders and Interest holders. A discussion of certain federal income

---

[6]   The ALH entities are owned by Nick Massad and family.

tax consequences of the Plan is provided below. This discussion is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury Regulations issued (in final or temporary form) thereunder, judicial decisions and current Internal Revenue Service ("IRS") administrative determinations in effect as of the date of this Disclosure Statement. Changes in these authorities, which may have retroactive effect, or new interpretations of existing authority may cause the federal income tax consequences of the Plan to differ materially from the consequences discussed below. Moreover, no rulings have been requested from the IRS and no legal opinions have been requested from counsel with respect to any tax consequences of the Plan.

This discussion does not cover all aspects of federal income taxation that may be relevant to the Debtor or to claimholders or to interest holders. For example, the discussion provided below does not address issues of special concern to certain types of taxpayers, such as dealers in securities, life insurance companies, financial institutions, banks, small business investment companies, mutual funds, regulated investment companies, tax exempt organizations and foreign taxpayers. The discussion, moreover, is limited to federal income tax consequences and does not address state, local or foreign taxes.

The discussion set forth below is included for general information only. The Debtor and its counsel are not making any representations regarding the particular tax consequences of confirmation and consummation of the Plan with respect to the Debtor, claimholders or Interest holders, nor are they rendering any form of legal opinion or tax advice on such tax consequences. The tax laws applicable to partnerships in bankruptcy are extremely complex and the following summary is not exhaustive. For these reasons, the discussion that follows is not a substitute for careful tax planning and professional tax advice based upon the individual circumstances of each holder of a Claim or Interest. Holders of Claims or Interest are urged to consult with their own tax advisors regarding the federal, state, local and foreign tax consequences of the plan.

### 15.2.   Federal Income Tax Consequences to the Debtor

WMF Airport Hotel files a form 1165 tax return and is a partnership for federal income tax purposes. WMF Airport Hotel will be required to adjust certain tax attributes such as its basis in assets to the extent of any debt discharged and not repaid under the Plan. Under the Plan, the Reorganized Debtor will continue to be treated the same for federal income tax purposes on and after the Effective Date.

### 15.3.   Federal Income Tax Consequences to Claimholders

Generally, a claimholder holding a Claim that is a debt and that is not evidenced by a debt instrument is entitled to a bad debt deduction under Section 166 of the Tax Code when the debt becomes worthless as a consequence of bankruptcy. If the Claimholder is a corporation or the debt is not a non-business bad debt, the claimholder is entitled to an ordinary loss deduction and can also take a deduction for the partial worthlessness of the debt. If the claimholder is not a corporation and the debt is a non-business bad debt, the claimholder is entitled to a short-term capital loss, which can be deducted only in the year the debt becomes wholly worthless. A claimholder is entitled to a loss only to the extent of the claimholder's basis in the debt. Thus, a trade debt held by a cash basis claimholder generally does not give rise to a bad debt deduction because the claimholder has no basis in the debt before payment. On the other hand, an accrual basis trade claimholder is entitled to a bad debt deduction where the amount of the debt previously has been taken into income.

In the case of certain categories of Claims, consideration should be given to the possible availability of a bad debt deduction under Sections 165 and 166 of the Tax Code for a period prior to the Effective Date.  In addition, because a loss will be allowed as a deduction only for the taxable year in which the loss was sustained, a Claimholder that claims a loss in the wrong taxable year risks denial of such loss altogether.  Under certain circumstances, a claimholder may recognize ordinary income to the extent that such holder is deemed on the Effective Date to have received consideration for such Claim that represents a recovery of a prior bad debt or loss deduction, regardless of whether gain or loss would have otherwise been realized or recognized by such holder on consummation of the Plan.  Claimholders who have taken a bad debt or loss deduction with respect to their claims should consult their own tax advisors as to the effect of such deduction in light of their particular circumstances.

In the case of Secured Claims, if mortgaged or pledged property is sold, whether to the creditor or another purchaser, for less than the amount of the Secured Claim, and the unsatisfied portion of the Secured Claim is not recovered, the holder of the Secured Claim may be able to deduct such unrecovered portion under Section 166(a) of the Tax Code as a bad debt, to the extent of the adjusted tax basis of such portion.

### 15.4.    Information Reporting and Backup Withholding

Under the Tax Code's backup withholding rules, a Claimholder may be subject to backup withholding at a rate of twenty-eight percent (28%) with respect to distributions or payments made pursuant to the Plan unless that holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax.  Claimholders may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING IS INTENDED ONLY AS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX ASPECTS OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE UNIQUE CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST.**

**DUE TO THE COMPLEX NATURE OF APPLICABLE TAX LAWS, CLAIMANTS SHOULD CONSULT WITH THEIR TAX PROFESSIONAL CONCERNING COMPLIANCE WITH AND THE AFFECT OF BOTH STATE AND FEDERAL TAX LAWS ON THEIR INTEREST BEFORE THEY CAST A BALLOT TO ACCEPT OR REJECT THE PLAN.**

**THE ACCOUNTANTS, ATTORNEYS, AND THE MANAGEMENT OF THE DEBTOR MAKE NO REPRESENTATIONS HEREIN CONCERNING THE IMPACT OF THE TAX LAW ON ANY INDIVIDUAL TREATED UNDER THE PLAN.**

DATED: October 21, 2011

Respectfully submitted,

*/s/ William M Friedrichs, Jr*

William M Friedrichs, Jr. , President
WMF Development, Inc., GP
WMF AIRPORT HOTEL, LTD

10/20/11:Discl1WMF.docx

DISCLOSURE STATEMENT APPENDIX "2"

**MOR-1**

### UNITED STATES BANKRUPTCY COURT

CASE NAME: **WMF Airport Hotel, Ltd**
CASE NUMBER: 11-3467
PROPOSED PLAN DATE:

ORDER FOR RELIEF D: 3-Jun-11
DISTRICT OF TEXAS: Southern
DIVISION: Houston

## MONTHLY OPERATING REPORT SUMMARY FOR Sep-11

| MONTH* | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 |
|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 243,120.00 | 228,671.00 | 228,813.00 | 201,861.00 | 0.00 | 0.00 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | -3,051.00 | -13,692.00 | 5,977.00 | -25,324.00 | 0.00 | 0.00 |
| NET INCOME (LOSS) (MOR-6) | -22,938.00 | -46,115.00 | -10,124.00 | -47,183.00 | 0.00 | 0.00 |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-8) | 229,305.08 | 212,156.47 | 347,099.55 | 309,780.61 | 0.00 | 0.00 |

*First month includes from date of filing.
***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE | | EXP. DATE |
|---|---|---|
| CASUALTY | YES (X) NO ( ) | |
| LIABILITY | YES (X) NO ( ) | |
| VEHICLE | YES ( ) NO (X) | _-_-_ |
| WORKER'S | YES ( ) NO (X) | _-_-_ |
| OTHER | YES ( ) NO (X) | _-_-_ |

CIRCLE ONE

Are all accounts receivable being collected within terms? (Yes) No
Are all post-petition liabilities, including taxes, being paid within terms? (Yes) No
Have any pre-petition liabilities been paid? Yes (No)
    If so, describe
Are all funds received being deposited into DIP bank accounts? (Yes) No
Were any assets disposed of outside the normal course of business? Yes (No)
    If so, describe
Are all U.S. Trustee Quarterly Fee Payments current? (Yes) No
What is the status of your Plan of Reorganization?

ATTORNEY NAME: Peter Johnson
FIRM NAME:
ADDRESS: 11 Greenway, S 2820
Houston, Texas 77046
CITY, STATE, ZIP:
TELEPHONE/FAX: 713.961.1200

**MOR-1**

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments is true and correct.

SIGNED X _RBX_ TITLE: VP/CFO

(PRINT NAME OF SIGNATORY)        DATE        Revised 07/01/98

CASE NAME: <u>WMF Airport Hotel, Ltd</u>
CASE NUMBER: <u>11-34676</u>

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| | 3-Jun-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 |
| **CURRENT ASSETS** | | | | | | | |
| Cash | 89,338.34 | 168,132.92 | 209,081.13 | 122,522.48 | 56,666.71 | | |
| Accounts Receivable | 124,371.15 | 41,107.15 | 52,116.49 | 55,966.50 | 55,340.13 | | |
| Retainage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | |
| Inventory: Lower of Cost or Market | 18,475.18 | 17,407.68 | 17,215.09 | 17,594.26 | 17,286.36 | | |
| | | | | | | | |
| Other | | 419,729.96 | 412,053.20 | 404,376.44 | 396,699.68 | | |
| TOTAL CURRENT ASSETS | 232,184.67 | 646,377.71 | 690,465.91 | 600,459.68 | 525,992.88 | 0.00 | 0.00 |
| PROPERTY, PLANT & EQUIP. | 9,723,220.00 | 5,541,013.15 | 5,541,013.15 | 5,545,144.15 | 5,545,144.15 | | |
| Less Accumulated Depreciation | | | | | | | |
| NET BOOK VALUE OF PP & E | 9,723,220.00 | 5,541,013.15 | 5,541,013.15 | 5,545,144.15 | 5,545,144.15 | 0.00 | 0.00 |
| OTHER ASSETS | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL ASSETS | $9,955,404.67 | $6,187,390.86 | $6,231,479.06 | $6,145,603.83 | $6,071,137.03 | $0.00 | $0.00 |

* Per Schedules and Statement of Affairs

MOR-2          Schedules Show Propertyat market value; we have converted to cost for reporting purposes to the U.S. Trustees.          *Revised 07/01/98*

CASE NAME: WMF Airport Hotel, Ltd
CASE NUMBER: 11-34676

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| | 3-Jun-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 |
| **LIABILITIES** | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | 224,525.12 | 321,424.93 | 242,336.86 | 215,051.26 | | |
| PRE-PETITION LIABILITIES | | | | | | | |
| Notes Payable - Secured | 8,970,000.00 | 8,970,000.00 | 8,970,000.00 | 8,970,000.00 | 8,970,000.00 | | |
| Priority Debt | 84,197.64 | 84,197.64 | 84,197.64 | 84,197.64 | 84,197.64 | | |
| Federal Income Tax** | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| FICA/Withholding | | | | | | | |
| Unsecured Debt | 34,903.61 | 99,036.21 | 92,339.14 | 95,675.81 | 95,675.81 | | |
| Other (disputed, cont, unliq unsec debt) | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| TOTAL PRE-PETITION LIABILITIES | 9,089,101.25 | 9,153,233.85 | 9,146,536.78 | 9,149,873.45 | 9,149,873.45 | 0.00 | 0.00 |
| **TOTAL LIABILITIES** | 9,089,101.25 | 9,377,758.97 | 9,467,961.71 | 9,392,210.31 | 9,364,924.71 | 0.00 | 0.00 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | |
| PREFERRED STOCK | | -1,426,981.06 | -1,426,980.60 | -1,426,980.60 | -1,426,980.60 | | |
| COMMON STOCK | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | |
| RETAINED EARNINGS: Filing Date | | -1,740,450.05 | -1,740,450.05 | -1,740,450.05 | -1,740,450.05 | | |
| RETAINED EARNINGS: Post Filing Date | | -22,937.00 | -69,052.00 | -79,175.83 | -126,357.03 | | |
| TOTAL OWNER'S EQUITY (NET WORTH) | 866,303.42 | -3,190,368.11 | -3,236,482.65 | -3,246,606.48 | -3,293,787.68 | 0.00 | 0.00 |
| **TOTAL LIABILITIES & OWNERS EQUITY** | $9,955,404.67 | $6,187,390.86 | $6,231,479.06 | $6,145,603.83 | $6,071,137.03 | $0.00 | $0.00 |

\* Per Schedules and Statement of Affairs    \*\*Subject to adjustment

MOR-3

*Revised 07.01.98*

CASE NAME: <u>WMF Airport Hotel, Ltd</u>

CASE NUMBER: <u>11-34676</u>

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 |
| *TRADE ACCOUNTS PAYABLE* | 30,325.63 | 115,742.42 | 39,926.48 | 60,468.28 | | |
| TAX PAYABLE | | | | | | |
| Federal Payroll Taxes | 0.00 | 0.00 | 0.00 | | | |
| State Payroll Taxes | 0.00 | 0.00 | 0.00 | | | |
| Ad Valorem Taxes | 0.00 | 0.00 | 0.00 | | | |
| Other Taxes | 47,617.35 | 59,337.14 | 65,469.00 | 76,590.24 | | |
| TOTAL TAXES PAYABLE | 47,617.35 | 59,337.14 | 65,469.00 | 76,590.24 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | |
| 1. PAYROLL | 40,615.23 | 50,258.59 | 49,576.47 | 8,695.24 | | |
| 2. INSURANCE | 61,597.57 | 54,753.40 | 47,909.23 | 41,065.06 | | |
| 3. MISC | 44,369.34 | 41,333.38 | 39,455.68 | 28,232.44 | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $224,525.12 | $321,424.93 | $242,336.86 | $215,051.26 | $0.00 | $0.00 |

*Payment requires Court Approval

MOR-4

*Revised 07/01/98*

CASE NAME: WMF Airport Hotel, Ltd

CASE NUMBER: **11-34676**

### AGING OF POST-PETITION LIABILITIES

MONTH      Sep-11

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | PAYROLL |
|---|---|---|---|---|---|---|
| 0-30 | 136,178.07 | 50,892.59 | | | 76,590.24 | 8,695.24 |
| 31-60 | 10,083.30 | 10,083.30 | | | | |
| 61-90 | -507.61 | -507.61 | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $145,753.76 | $60,468.28 | $0.00 | $0.00 | $76,590.24 | $8,695.24 |

### AGING OF ACCOUNTS RECEIVABLE

| MONTH | June-11 | July-11 | August-11 | September-11 | October-11 | |
|---|---|---|---|---|---|---|
| 0-30 DAYS | 19,284.21 | 23,733.50 | 18,924.95 | 19,295.27 | | |
| 31-60 DAYS | 2,077.64 | 9,556.35 | 15,434.29 | 13,902.44 | | |
| 61-90 DAYS | 1,120.09 | 254.35 | 276.12 | 2,278.46 | | |
| 91+ DAYS | 429.36 | 75.00 | 0.00 | | | |
| TOTAL | $22,911.30 | $33,619.20 | $34,635.36 | $35,476.17 | $0.00 | $0.00 |

**MOR-5**

Revised 07/01/98

CASE NAME:  WMF Airport Hotel, Ltd

CASE NUMBER: 11-34676

## STATEMENT OF INCOME (LOSS)

| | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | FILING TO |
|---|---|---|---|---|---|---|---|
| | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | DATE |
| REVENUES  (MOR-1) | 243,120.00 | 228,671.00 | 228,813.00 | 201,861.00 | | | 902,465.00 |
| TOTAL COST OF REVENUES | 123,750.00 | 121,776.00 | 116,422.00 | 124,299.00 | | | 486,247.00 |
| GROSS PROFIT | 119,370.00 | 106,895.00 | 112,391.00 | 77,562.00 | 0.00 | 0.00 | 416,218.00 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | 41,758.00 | 42,430.00 | 38,281.00 | 29,598.00 | | | 152,067.00 |
| General & Administrative | 23,147.00 | 27,142.00 | 25,163.00 | 27,480.00 | | | 102,932.00 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | | | | | | | 0.00 |
| Management Fee | 7,203.00 | 6,863.00 | 6,753.00 | 0.00 | | | 20,819.00 |
| Other | 50,313.00 | 44,151.00 | 36,217.00 | 45,808.00 | | | 176,489.00 |
| TOTAL OPERATING EXPENSES | 122,421.00 | 120,586.00 | 106,414.00 | 102,886.00 | 0.00 | 0.00 | 452,307.00 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | -3,051.00 | -13,691.00 | 5,977.00 | -25,324.00 | 0.00 | 0.00 | -36,089.00 |
| INTEREST EXPENSE | | | | | | | 0.00 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | 16,336.00 | 31,349.00 | 13,581.00 | 17,892.00 | | | 79,158.00 |
| OTHER ITEMS** | 3,551.00 | 1,074.00 | 2,520.00 | 3,967.00 | | | 11,112.00 |
| TOTAL INT, DEPR & OTHER ITEMS | 19,887.00 | 32,423.00 | 16,101.00 | 21,859.00 | 0.00 | 0.00 | 90,270.00 |
| NET INCOME BEFORE TAXES | -22,938.00 | -46,114.00 | -10,124.00 | -47,183.00 | 0.00 | 0.00 | -126,359.00 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS) (MOR-1) | ($22,938.00) | ($46,114.00) | ($10,124.00) | ($47,183.00) | $0.00 | $0.00 | ($126,359.00) |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

*  *Tax and Insurance Escrow.*

* *Capital Leases and Interest.*

**MOR-6**

*Revised 07-01-98*

CASE NAME: WMF Airport Hotel, Ltd
CASE NUMBER: 11-34676

| CASH RECEIPTS AND DISBURSEMENTS | MONTH Jun-11 | MONTH Jul-11 | MONTH Aug-11 | MONTH Sep-11 | MONTH Oct-11 | MONTH Nov-11 | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $93,570.97 | $168,132.92 | $209,081.13 | $122,522.48 | $56,666.71 | $56,666.71 | $93,570.97 |
| RECEIPTS: | | | | | | | |
| 2. CASH SALES | 290,182.68 | 253,104.68 | 256,690.89 | 243,298.47 | | | 1,043,276.72 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 13,684.35 | | 3,850.01 | 626.37 | | | 18,160.73 |
| 4. LOANS & ADVANCES (attach list) | 0.00 | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | 0.00 |
| 6. OTHER (attach list) | | 0.00 | 0.00 | | | | 0.00 |
| TOTAL RECEIPTS** | 303,867.03 | 253,104.68 | 260,540.90 | 243,924.84 | 0.00 | 0.00 | 1,061,437.45 |
| | | | | | | | 0.00 |
| DISBURSEMENTS: | | | | | | | |
| 7. NET PAYROLL | 104,986.93 | 102,306.47 | 107,222.02 | 146,330.57 | | | 460,845.99 |
| 8. PAYROLL TAXES PAID | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | 50,828.98 | 37,890.80 | 34,259.44 | 34,452.11 | | | 157,431.33 |
| 10. SECURED/RENTAL/LEASES | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | 42,244.72 | 13,686.91 | 48,972.03 | 19,656.84 | | | 124,560.50 |
| 12. INSURANCE | 0.00 | 6,844.17 | 8,758.00 | 13,688.34 | | | 29,290.51 |
| 13. INVENTORY PURCHASES | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | 232.89 | 645.02 | 457.95 | 231.25 | | | 1,567.11 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 20,023.64 | 21,166.34 | 64,773.52 | 39,983.64 | | | 145,947.14 |
| 17. ADMINISTRATIVE & SELLING | 10,987.92 | 27,666.76 | 75,454.04 | 50,562.86 | | | 164,671.58 |
| 18. MANAGEMENT FEE | | | 7,202.55 | | | | 7,202.55 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 229,305.08 | 210,206.47 | 347,099.55 | 304,905.61 | 0.00 | 0.00 | 1,091,516.71 |
| 19. PROFESSIONAL FEES | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | 1,950.00 | | 4,875.00 | | | 6,825.00 |
| 21. MIDLAND LOAN SERVICE - NOTE PAYMENT | 0.00 | | | | | | 0.00 |
| TOTAL DISBURSEMENTS** | 229,305.08 | 212,156.47 | 347,099.55 | 309,780.61 | 0.00 | 0.00 | 1,098,341.71 |
| 22. NET CASH FLOW | 74,561.95 | 40,948.21 | -86,558.65 | -65,855.77 | 0.00 | 0.00 | -36,904.26 |
| 23. CASH - END OF MONTH (MOR-2) | $168,132.92 | $209,081.13 | $122,522.48 | $56,666.71 | $56,666.71 | $56,666.71 | $56,666.71 |

MOR-7      **Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

Revised 07/01/98

CASE NAME: WMF Airport Hotel, Ltd
CASE NUMBER: 11-34676

## CASH ACCOUNT RECONCILIATION**
### MONTH OF _____ Sep-11 _____

| BANK NAME | Bank #1 | Bank #2 | Bank #3 | Bank #4 | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | 3552284/8378537727 | 3553744 | 8378537701 | 4121638852 | |
| ACCOUNT TYPE | OPERATING | GM | TAX | OTHER FUNDS | TOTAL |
| BANK BALANCE | 72,420.84 | 8,779.37 | 8,216.11 | 2,632.24 | $92,048.56 |
| DEPOSITS IN TRANSIT | 43,119.21 | 15,529.96 | | | $58,649.17 |
| OUTSTANDING CHECKS | 94,031.02 | | | | $94,031.02 |
| ADJUSTED BANK BALANCE | $21,509.03 | $24,309.33 | $8,216.11 | $2,632.24 | $56,666.71 |
| BEGINNING CASH - PER BOOKS | 87,288.91 | 24,309.33 | 8,236.11 | 2,688.13 | $122,522.48 |
| RECEIPTS* | 243,924.84 | | | | $243,924.84 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR  CONTRIBUTION BY INDIVIDUAL      DEBTOR   MFR-2 | | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 309,704.72 | | 20.00 | 55.89 | $309,780.61 |
| ENDING CASH - PER BOOKS | $21,509.03 | $24,309.33 | $8,216.11 | $2,632.24 | $56,666.71 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

Revised 07/01/98

CASE NAME:  WMF Airport Hotel, Ltd

CASE NUMBER:  11-34676

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 |
| 1. | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 |
| 1. Law Offices of Peter Johnson | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL PROFESSIONALS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

MOR-9

Revised 07/01/98

**DISCLOSURE STATEMENT APPENDIX "3"**

WMF AIRPORT HOTEL LTD
PROFIT AND LOSS SUMMARY
Projected 2012 Based on Workout with Wells Fargo

| | JAN Proj 2012 | FEB Proj 2012 | MAR Proj 2012 | APR Proj 2012 | MAY Proj 2012 | JUN Proj 2012 | JUL Proj 2012 | AUG Proj 2012 | SEP Proj 2012 | OCT Proj 2012 | NOV Proj 2012 | DEC Proj 2012 | TOTAL Proj 2012 | TOTAL Proj 2013 | TOTAL Proj 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | | | | |
| ROOMS | 248,334 | 273,571 | 351,819 | 318,945 | 389,058 | 283,201 | 265,874 | 285,245 | 235,595 | 252,050 | 228,887 | 213,114 | 3,346,722 | 3,695,726 | 4,071,264 |
| TELEPHONE | 53 | 253 | 168 | 189 | 287 | 287 | 287 | 143 | 143 | 70 | 35 | 133 | 1,989 | 1,989 | 2,415 |
| FOOD | 36,396 | 37,210 | 37,182 | 32,537 | 32,845 | 32,685 | 28,819 | 23,211 | 40,437 | 31,145 | 36,601 | 31,001 | 401,293 | 443,141 | 488,171 |
| BEVERAGE | 5,455 | 5,681 | 4,330 | 4,749 | 5,817 | 5,605 | 3,878 | 4,116 | 4,490 | 5,084 | 5,094 | 5,084 | 58,816 | 64,399 | 71,549 |
| OTHER DEPARTMENTS | 2,385 | 1,743 | 2,798 | 3,865 | 3,169 | 3,597 | 5,955 | 4,460 | 1,090 | 2,208 | 1,551 | 1,551 | 33,847 | 37,123 | 40,895 |
| TOTAL GROSS REVENUE | 293,652 | 318,967 | 396,207 | 361,037 | 430,878 | 325,337 | 304,814 | 317,175 | 282,311 | 286,815 | 271,815 | 250,429 | 3,842,437 | 4,243,355 | 4,674,294 |
| **EXPENSES OF OPERATION** | | | | | | | | | | | | | | | |
| ROOMS | 73,354 | 76,609 | 100,429 | 90,572 | 92,348 | 85,335 | 87,739 | 81,391 | 69,599 | 77,608 | 85,460 | 82,039 | 1,002,483 | 1,084,883 | 1,171,220 |
| TELEPHONE | | | | | | | | | | | | | 2,825 | 2,399 | 2,825 |
| FOOD | 32,301 | 31,781 | 41,507 | 33,927 | 34,215 | 36,821 | 33,010 | 32,639 | 34,910 | 33,678 | 34,910 | 31,480 | 411,180 | 431,355 | 451,428 |
| BEVERAGE | 4,262 | 5,763 | 5,119 | 4,296 | 4,095 | 4,469 | 3,467 | 3,704 | 3,253 | 4,948 | 3,375 | 4,380 | 51,131 | 55,333 | 59,737 |
| OTHER DEPARTMENTS | 93 | – | 408 | 197 | 100 | 73 | 376 | 61 | 22 | 58 | 227 | 24 | 1,639 | 1,810 | 1,994 |
| TOTAL EXPENSES OF OPERATION | 110,011 | 114,228 | 147,621 | 128,994 | 130,761 | 126,704 | 124,598 | 120,289 | 107,786 | 116,299 | 123,973 | 117,992 | 1,469,257 | 1,576,207 | 1,687,204 |
| **GROSS PROFIT** | | | | | | | | | | | | | | | |
| ROOMS | 175,980 | 196,982 | 251,390 | 228,373 | 296,710 | 197,866 | 178,135 | 203,854 | 165,996 | 174,472 | 143,427 | 131,075 | 2,344,240 | 2,610,843 | 2,900,044 |
| TELEPHONE | 81 | 179 | (80) | 166 | 243 | 203 | 282 | 282 | 282 | 63 | 131 | (35) | (836) | (410) | (410) |
| FOOD | 4,095 | 5,939 | (4,326) | (618) | (1,628) | (3,935) | (4,191) | (9,428) | 5,527 | (2,533) | 1,691 | (479) | (9,886) | 11,786 | 36,743 |
| BEVERAGE | 1,193 | (82) | (789) | 453 | 1,723 | 976 | 411 | 413 | 1,651 | (637) | 1,669 | 704 | 7,685 | 9,616 | 11,812 |
| OTHER DEPARTMENTS | 2,292 | 1,743 | 2,390 | 3,668 | 3,069 | 3,524 | 5,579 | 4,399 | 1,068 | 2,150 | 924 | 1,172 | 31,978 | 35,312 | 38,901 |
| TOTAL GROSS PROFIT | 183,641 | 204,739 | 248,586 | 232,043 | 300,117 | 198,633 | 180,216 | 196,886 | 174,524 | 173,516 | 147,842 | 132,437 | 2,373,180 | 2,667,147 | 2,987,089 |
| **UNDISTRIB EXP OF OP** | | | | | | | | | | | | | | | |
| ADMINISTRATIVE & GENERAL | 30,092 | 24,764 | 34,134 | 24,165 | 32,882 | 26,112 | 27,342 | 27,359 | 26,280 | 24,878 | 24,407 | 22,016 | 324,431 | 340,388 | 356,187 |
| ADVERTISING & PROMOTION | 26,601 | 24,163 | 31,523 | 31,610 | 31,065 | 29,041 | 29,461 | 23,561 | 23,037 | 19,125 | 24,584 | 21,143 | 313,972 | 346,731 | 381,944 |
| FRANCHISE FEES | 15,498 | 18,186 | 17,698 | 15,741 | 16,628 | 13,757 | 12,969 | 14,720 | 12,680 | 12,923 | 12,728 | 11,184 | 174,712 | 192,932 | 212,536 |
| MANAGEMENT FEE | 7,655 | 8,344 | 8,171 | 8,676 | 9,084 | 6,565 | 6,863 | 6,753 | 6,920 | 6,802 | 6,792 | 5,993 | 90,293 | 99,311 | 109,841 |
| MAINTENANCE | 21,732 | 15,122 | 25,015 | 25,015 | 21,084 | 25,503 | 25,211 | 23,161 | 22,838 | 22,787 | 23,362 | 21,358 | 251,849 | 263,145 | 300,275 |
| ENERGY | 16,625 | 17,887 | 15,987 | 17,205 | 19,953 | 24,808 | 25,284 | 25,284 | 24,469 | 20,887 | 18,457 | 18,830 | 243,488 | 276,098 | 284,472 |
| TOTAL UNDISTRIB EXP OF OP | 118,203 | 108,467 | 133,912 | 121,913 | 131,277 | 125,386 | 120,786 | 108,610 | 110,566 | 107,392 | 109,428 | 102,804 | 1,398,744 | 1,518,605 | 1,645,255 |
| **GROSS OPERATING PROFIT** | 65,437 | 96,272 | 114,674 | 110,130 | 168,840 | 73,248 | 59,429 | 88,276 | 63,958 | 66,124 | 38,414 | 29,633 | 974,436 | 1,148,542 | 1,341,835 |
| **FIXED EXPENSES** | | | | | | | | | | | | | | | |
| PROPERTY TAXES | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 10,158 | 121,896 | 121,896 | 121,896 |
| LAND RENT | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| INCENTIVE MGT FEE | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| PROPERTY INSURANCE | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 8,761 | 105,132 | 105,132 | 105,132 |
| **NET OPERATING INCOME** | 46,518 | 77,353 | 95,755 | 91,211 | 149,921 | 54,329 | 40,510 | 69,357 | 45,039 | 47,205 | 19,495 | 10,714 | 747,408 | 921,514 | 1,114,807 |
| FRANCHISE TAXES | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| INTEREST INCOME | – | – | – | – | – | – | – | – | – | – | – | – | – | 0 | – |
| CAPITAL LEASES | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 2,520 | 30,240 | 30,240 | 30,240 |
| **INCOME BEFORE DEPRECIATION** | 43,998 | 74,833 | 93,235 | 88,691 | 147,401 | 51,809 | 37,990 | 66,837 | 42,519 | 44,685 | 16,975 | 8,194 | 717,168 | 891,274 | 1,084,566 |
| OWNERS COMMISSION | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| DEPRECIATION | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Debt Service(30 yr,4.25,9,300,000) | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 45,750 | 549,000 | 549,000 | 549,000 |
| REPLACEMENT RESERVE | 8,810 | 9,569 | 11,886 | 10,831 | 12,926 | 9,760 | 9,144 | 9,515 | 8,469 | 8,694 | 8,154 | 7,513 | 115,273 | 127,301 | 140,229 |
| **NET INCOME/(LOSS)** | (10,561) | 19,514 | 35,599 | 32,110 | 88,725 | (3,701) | (16,904) | 11,572 | (11,701) | (9,760) | (36,930) | (45,069) | 52,895 | 214,973 | 395,338 |
| **HOTEL ROOM STATISTICS** | | | | | | | | | | | | | | | |
| AVAILABLE ROOMS | 6,014 | 5,432 | 6,014 | 5,820 | 6,014 | 5,820 | 6,014 | 6,014 | 5,820 | 6,014 | 5,820 | 6,014 | 70,810 | 70,810 | 70,810 |
| OCCUPIED ROOMS | 3,151 | 3,297 | 4,330 | 3,777 | 4,059 | 3,492 | 3,428 | 3,440 | 3,003 | 3,236 | 2,851 | 2,851 | 41,081 | 43,215 | 45,340 |
| OCCUPANCY PERCENT | 52.4% | 60.7% | 72.0% | 64.9% | 67.5% | 60.0% | 57.0% | 57.2% | 51.6% | 53.8% | 52.0% | 47.4% | 58.0% | 61.0% | 64.0% |
| AVERAGE DAILY RATE | $78.81 | 82.97 | 81.25 | 84.44 | 95.85 | 81.10 | 77.56 | 82.91 | 78.45 | 77.89 | 80.28 | 74.76 | $81.49 | 85.52 | 89.79 |
| NUMBER OF GUESTS | 3,644 | 3,680 | 4,641 | 3,794 | 3,927 | 3,098 | 3,389 | 3,043 | 2,964 | 3,239 | 3,360 | 2,988 | 41,767 | 43,606 | 46,086 |
| AVERAGE PER GUEST | $68.42 | 74.34 | 75.81 | 84.07 | 99.07 | 91.41 | 78.45 | 93.74 | 79.49 | 77.83 | 71.32 | 71.13 | $80.13 | 84.13 | 88.34 |
| REVPAR | $41.46 | 50.35 | 58.50 | 54.80 | 64.69 | 48.66 | 44.21 | 47.43 | 40.48 | 41.92 | 39.33 | 35.44 | $47.26 | 52.19 | 57.50 |
| Market RevPar | $41.78 | 49.57 | 57.08 | 52.07 | 56.60 | 52.73 | 45.36 | 45.44 | 44.73 | 44.53 | 43.69 | 35.38 | $47.38 | | |

APPENDIX TO DISCLOSURE STATEMENT "4"

WMF AIRPORT HOTEL LTD
PROFIT AND LOSS STATEMENT
FOR THE MONTH AND EIGHT MONTHS ENDING AUGUST 31, 2011

| CURRENT MONTH | | | YEAR-TO-DATE | |
| ACTUAL | % | | ACTUAL | % |
|---|---|---|---|---|
| | | REVENUE | | |
| 201,883 | 88.2% | ROOMS | 1,889,877 | 87.9% |
| 143 | 0.1% | TELEPHONE | 1,466 | 0.1% |
| 18,211 | 8.0% | FOOD | 190,609 | 8.9% |
| 4,116 | 1.8% | BEVERAGE | 39,472 | 1.8% |
| 4,460 | 1.9% | OTHER DEPARTMENTS | 27,972 | 1.3% |
| 228,813 | 100.0% | TOTAL GROSS REVENUE | 2,149,396 | 100.0% |
| | | DEPARTMENTAL EXPENSE | | |
| 78,743 | 39.0% | ROOMS | 670,288 | 35.5% |
| 2,494 | 1744.4% | TELEPHONE | 2,745 | 187.2% |
| 31,420 | 172.5% | FOOD | 265,754 | 139.4% |
| 3,704 | 90.0% | BEVERAGE | 35,175 | 89.1% |
| 61 | 1.4% | OTHER DEPARTMENTS | 1,308 | 4.7% |
| 116,422 | 50.9% | TOTAL EXPENSES OF OPERATION | 975,269 | 45.4% |
| | | NET DEPARTMENTAL INCOME | | |
| 123,140 | 61.0% | ROOMS | 1,219,589 | 64.5% |
| (2,351) | -1644.4% | TELEPHONE | (1,278) | -87.2% |
| (13,209) | -72.5% | FOOD | (75,145) | -39.4% |
| 413 | 10.0% | BEVERAGE | 4,297 | 10.9% |
| 4,399 | 98.6% | OTHER DEPARTMENTS | 26,664 | 95.3% |
| 112,391 | 49.1% | TOTAL GROSS PROFIT | 1,174,127 | 54.6% |
| | | UNDISTRIBUTED EXP OF OP | | |
| 25,163 | 11.0% | ADMINISTRATIVE & GENERAL | 199,352 | 9.3% |
| 23,561 | 10.3% | ADVERTISING & PROMOTION | 225,982 | 10.5% |
| 14,720 | 6.4% | FRANCHISE FEE | 125,198 | 5.8% |
| 6,753 | 3.0% | MANAGEMENT FEE | 63,787 | 3.0% |
| 13,121 | 5.7% | MAINTENANCE | 165,891 | 7.7% |
| 23,096 | 10.1% | ENERGY | 160,845 | 7.5% |
| 106,414 | 46.5% | TOTAL UNDISTRIBUTED EXP OF OP | 941,054 | 43.8% |
| 5,977 | 2.6% | GROSS OPERATING PROFIT | 233,073 | 10.8% |
| | | FIXED EXPENSES | | |
| 6,169 | 2.7% | PROPERTY TAXES | 78,427 | 3.6% |
| 0 | 0.0% | MORTGAGE PAYMENT | 0 | 0.0% |
| 0 | 0.0% | SALES TAX AUDIT | 0 | 0.0% |
| 7,412 | 3.2% | PROPERTY INSURANCE | 71,686 | 3.3% |
| (7,603) | -3.3% | NET OPERATING INCOME | 82,960 | 3.9% |
| 0 | 0.0% | FRANCHISE TAXES | 0 | 0.0% |
| 0 | 0.0% | INTEREST INCOME | 0 | 0.0% |
| 2,520 | 1.1% | CAPITAL LEASES | 18,345 | 0.9% |
| (10,124) | -4.4% | INCOME BEFORE DEPRECIATION | 64,614 | 3.0% |
| 0 | 0.0% | EXTRAORDINARY EXPENSE | 25,000 | 1.2% |
| 0 | 0.0% | INTEREST | 1,031 | 0.0% |
| 0 | 0.0% | REPLACEMENT RESERVE | 0 | 0.0% |
| (10,124) | -4.4% | NET INCOME | 38,584 | 1.8% |

| | | HOTEL ROOM STATISTICS | | |
|---|---|---|---|---|
| 6,014 | | AVAILABLE ROOMS | 47,142 | |
| 1,514 | $68.91 | OCCUPIED TRANSIENT RMS/ADR | 10,591 | $80.27 |
| 1,075 | $90.75 | OCCUPIED GROUP RMS/ADR | 13,402 | $77.58 |
| 2,589 | $77.98 | TOTAL OCCUPIED RMS/ADR | 23,993 | $78.77 |
| 43.0% | | OCCUPANCY PERCENT | 50.9% | |
| $77.98 | | AVERAGE DAILY RATE | $78.77 | |
| 3,043 | | NUMBER OF GUESTS | 29,216 | |
| $66.34 | | AVERAGE PER GUEST | $64.69 | |
| $33.57 | | REVPAR | $40.09 | |
| 2,032 | | ARRIVALS | 17,846 | |
| 1.27 | | AVERAGE STAY | 1.34 | |
| -48.2% | | FLOW THRU | -126.6% | |